**HOGAN LOVELLS US LLP**
VASSI ILIADIS (Bar No. 296382)
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4640
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com

CRAIG A. HOOVER (Bar No. 113965)
DAVID M. FOSTER (admitted pro hac vice) (D.C. Bar No. 497981)
DANIELLE DESAULNIERS STEMPEL (admitted pro hac vice)
    (D.C. Bar No. 1658137)
DANA A. RAPHAEL (admitted pro hac vice) (D.C. Bar No. 1741559)
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5694
Facsimile: (202) 637-5910
craig.hoover@hoganlovells.com
david.foster@hoganlovells.com
danielle.stempel@hoganlovells.com
dana.raphael@hoganlovells.com

*Counsel for Defendant*
Bumble Bee Foods, LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKHMAD; ANGGA; MUHAMMAD SAHRUDIN; and MUHAMMAD SYAFI'I, | Case No. 3:25-cv-00583-MMA-DEB |
| | Action Filed: March 12, 2025 |
| Plaintiffs, | The Honorable Michael M. Anello |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BUMBLE BEE FOODS, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| BUMBLE BEE FOODS, LLC, | |
| Defendant. | |
| | NO ORAL ARGUMENT PURSUANT TO LOCAL RULE |
| | Date: September 5, 2025 |
| | Judge: Hon. Michael M. Anello |
| | Courtroom: 3C |

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## **<u>TABLE OF CONTENTS</u>**

2
<u>Page</u>

3  TABLE OF AUTHORITIES ......................................................................ii

4  INTRODUCTION ................................................................................. 1

5  BACKGROUND ................................................................................. 3

6  LEGAL STANDARD ........................................................................... 7

7  ARGUMENT ....................................................................................... 8

8  I.    Plaintiffs Lack Standing To Seek Equitable Relief.......................... 8

9  II.   Plaintiffs Fail To State A Claim Under The TVPRA ...................... 11

10       A.   The Complaint does not plausibly allege knowledge ......................... 11

11       B.   The Complaint does not plausibly allege participation

12            in a venture ...................................................................... 14

13  III.  Plaintiffs' TVPRA Claim Is Impermissibly Extraterritorial ........................ 16

14       A.   Congress did not clearly give § 1595 extraterritorial effect .............. 16

15       B.   This case does not involve a domestic application of § 1595 ........... 21

16  IV.   Plaintiffs' California Negligence Claim Should Be Dismissed ................... 23

17  CONCLUSION......................................................................................25

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
  532 F. Supp. 3d 1018 (D. Or. 2021) ................................................. 12

*Abafita v. Aldukhan*,
  No. 1:16-cv-06072, 2019 WL 6735148 (S.D.N.Y. Apr. 4, 2019),
  *R. & R. adopted*, 2019 WL 4409472 (S.D.N.Y. Sept. 16, 2019) ..................... 19

*Abernathy v. Carlyle Grp., Inc.*,
  No. 1:22-cv-03603, 2024 WL 5331993 (D.D.C. Sept. 27, 2024) .................... 20

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
  600 U.S. 412 (2023) ..................................................... 21, 22

*Adhikari v. KBR Inc.*,
  No. 4:16-cv-02478, 2017 WL 4237923 (S.D. Tex. Sept. 25, 2017) ................. 22

*Acri v. Varian Assocs., Inc.*,
  114 F.3d 999 (9th Cir. 1997) ............................................... 23

*Adhikari v. Kellogg Brown & Root*,
  845 F.3d 184 (5th Cir. 2017) ............................................... 19

*Alexandre v. Amazon.com, Inc.*,
  No. 3:22-cv-01459, 2024 WL 2445705 (S.D. Cal. May 23, 2024) .................... 9

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006) ........................................................ 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................... 7

*Birch v. Fam. First Life, LLC*,
  No. 3:22-cv-00815, 2023 WL 2940020 (S.D. Cal. Apr. 13, 2023) ................... 7

*Brinker v. Axos Bank*,
  No. 3:22-cv-00386, 2022 WL 17724408 (S.D. Cal. Dec. 15, 2022) ................ 13

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

# <u>TABLE OF AUTHORITIES—Continued</u>

Page(s)

*Brown v. USA Taekwondo*,
253 Cal. Rptr. 3d 708 (Cal. Ct. App. 2019),
*aff'd*, 483 P.3d 159 (Cal. 2021)................................................2, 24, 25

*Catelyn H. v. G6 Hosp., LLC*,
No. 2:24-cv-00939, 2025 WL 929032 (D. Nev. Mar. 26, 2025) .......................23

*Charleston v. Nevada*,
830 F. App'x 948 (9th Cir. 2020)................................................9

*City of Chicago v. Int'l Coll. of Surgeons*,
522 U.S. 156 (1997) ................................................23

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ................................................8, 9

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................9

*Daramola v. Oracle Am., Inc.*,
92 F.4th 833 (9th Cir. 2024)................................................18

*Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*,
145 S. Ct. 681 (2025) ................................................6

*Doe v. Lombardo*,
745 F. Supp. 3d 1109 (D. Nev. 2024) ................................................9, 10

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ................................................15

*Doe #9 v. Wyndham Hotels & Resorts, Inc.*,
No. 4:19-cv-05016, 2021 WL 1186333 (S.D. Tex. Mar. 29, 2021) .................14

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
717 F. Supp. 3d 464 (E.D.N.C. 2024)................................................11, 12

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

- iii -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

1

## <u>TABLE OF AUTHORITIES—Continued</u>

2

Page(s)

3  *Doe (S.M.A.) v. Salesforce, Inc.*,

4      No. 3:23-cv-00915, 2024 WL 1337370 (N.D. Tex. Mar. 28, 2024).................14

5  *Doe I v. Apple Inc.*,

6      96 F.4th 403 (D.C. Cir. 2024) ...........................................................9, 10, 14-17

7  *Domenici v. Murphy*,

8      No. 1:21-cv-11310, 2021 WL 12334603 (D. Mass. Nov. 3, 2021) ...................23

9  *Food Mktg. Inst. v. Argus Leader Media*,

10      588 U.S. 427 (2019) ............................................................................................20

11  *Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter*,

12      575 U.S. 650 (2015) ............................................................................................18

13  *Ledesma v. Jack Stewart Produce, Inc.*,

14      816 F.2d 482 (9th Cir. 1987) ..............................................................................23

15  *Loomis v. Slendertone Distrib., Inc.*,

16      420 F. Supp. 3d 1046 (S.D. Cal. 2019) ................................................................3

17  *M.S. v. Brown*,

18      902 F.3d 1076 (9th Cir. 2018) ............................................................................10

19  *Martinez v. Ford Motor Co.*,

20      No. 3:22-cv-01082, 2023 WL 2977727 (S.D. Cal. Apr. 17, 2023)...................10

21  *Mia v. Kimberly-Clark Corp.*,

22      No. 1:22-cv-02353, 2025 WL 752564 (D.D.C. Mar. 10, 2025),

23      *appeal pending*, No. 25-7046 (D.C. Cir.)....................................11-14, 16, 20-22

24  *Moffitt v. County of San Diego*,

25      No. 3:24-cv-01445, 2024 WL 4774900 (S.D. Cal. Nov. 13, 2024).................23

26  *Morrison v. Nat'l Austl. Bank Ltd.*,

27      561 U.S. 247 (2010) ............................................................................................21

28

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- iv -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Murthy v. Missouri*,

603 U.S. 43 (2024) ............................................................................ 8

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*,

484 U.S. 97 (1987) .......................................................................... 10

*Plaintiff A v. Schair*,

No. 2:11-cv-00145, 2014 WL 12495639 (N.D. Ga. Sept. 9, 2014) ................... 19

*Ratha v. Phatthana Seafood Co.*,

35 F.4th 1159 (9th Cir. 2022) ........................................... 11, 14, 17

*Ratha v. Phatthana Seafood Co.*,

No. 2:16-cv-04271, 2016 WL 11020222 (C.D. Cal. Nov. 9, 2016) ................ 19

*Reed v. Barnes*,

No. 3:24-cv-01500, 2025 WL 963072 (N.D. Tex. Mar. 31, 2025) .................... 23

*Regents of Univ. of Cal. v. Superior Ct.*,

413 P.3d 656 (Cal. 2018) ................................................................. 24

*RJR Nabisco v. Eur. Cmty.*,

579 U.S. 325 (2016) ................................................................... 16-22

*Rodriguez v. Pan Am. Health Org.*,

29 F.4th 706 (D.C. Cir. 2022) ........................................................... 22

*Rodriguez-Rincon v. County of San Diego*,

No. 3:07-cv-00562, 2009 WL 10671897 (S.D. Cal. June 30, 2009) ................ 23

*Roe v. Howard*,

917 F.3d 229 (4th Cir. 2019) ...................................................... 20, 21

*San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.*,

No. 3:14-cv-04393, 2019 WL 11073502 (N.D. Cal. July 26, 2019) ................ 10

*S.J. v. Choice Hotels Int'l, Inc.*,

473 F. Supp. 3d 147 (E.D.N.Y. 2020) ................................................. 11

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Scheibe v. Livwell Prods., LLC,*

    No. 3:23-cv-00216, 2023 WL 4414580 (S.D. Cal. July 7, 2023) .................. 9, 10

*Spokeo, Inc. v. Robins,*

    578 U.S. 330 (2016) ............................................................................................ 7

*Steel Co. v. Citizens for a Better Env't,*

    523 U.S. 83 (1998) ............................................................................................ 8

*Tanedo v. E. Baton Rouge Parish Sch. Bd.,*

    No. 8:10-cv-01172, 2012 WL 5378742 (C.D. Cal. Aug. 27, 2012) .................. 22

*TransUnion LLC v. Ramirez,*

    594 U.S. 413 (2021) ............................................................................................ 8

*U.S. ex rel. Hawkins v. ManTech Int'l Corp.,*

    752 F. Supp. 3d 118 (D.D.C. 2024) .............................................................. 20, 21

*United States v. Ron Pair Enters., Inc.,*

    489 U.S. 235 (1989) .......................................................................................... 19

*Walcoff v. Innofoods USA, Inc.,*

    No. 3:22-cv-01485, 2023 WL 3262940 (S.D. Cal. May 4, 2023) .................. 7, 8

**STATUTES:**

18 U.S.C. § 1595(a) ...................................................... 1, 10, 11, 14, 15, 17

18 U.S.C. § 1595A(a) ...................................................................................... 10

18 U.S.C. § 1596(a) ...................................................................................... 17-19

18 U.S.C. § 1596(b) ...................................................................................... 18, 19

18 U.S.C. § 1962 .............................................................................................. 17

18 U.S.C. § 1964(c) ........................................................................................ 17

18 U.S.C. § 3271(a) ........................................................................................ 21

28 U.S.C. § 1367(c)(3) .................................................................................... 23

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- vi -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

**<u>TABLE OF AUTHORITIES—Continued</u>**

Page(s)

Pub. L. No. 110-457, 122 Stat. 5044 (Dec. 23, 2008)

§ 221(2), 122 Stat. at 5067 ...................................................................... 18, 21

§ 223, 122 Stat. at 5071 ............................................................................. 18, 21

Pub. L. No. 114-22 § 120, 129 Stat. 227, 247 (May 29, 2015) ............................. 21

Pub. L. No. 115-164 § 6, 132 Stat. 1253, 1255 (Apr. 11, 2018) ........................... 21

Pub. L. No. 117-347 § 102, 136 Stat. 6199, 6200 (Jan. 5, 2023) .......................... 21

**OTHER AUTHORITIES:**

Bumble Bee, Trace My Catch, https://www.bumblebee.com/tracemycatch

(last visited June 2, 2025) ........................................................................ 5

Business & Human Rights Resource Centre, *Out of Sight: Modern Slavery*

*in Pacific Supply Chains of Canned Tuna, A Survey & Analysis of*

*Company Action* (June 2019), https://perma.cc/97LL-6P65 .......................... 5

Chris Eaton, *Why Bumble Bee Tuna Should Concern You*, Greenpeace

(Mar. 19, 2020), https://perma.cc/3JSU-VPC3 .......................................... 5

Greenpeace, *Choppy Waters* (Mar. 2020), https://perma.cc/BWW3-VF3J .............. 3

Greenpeace, *Fake My Catch* (Sept. 2022), https://perma.cc/63GH-6HBV ........... 3-6

Greenpeace, *Forced Labor at Sea* (May 2021),

https://perma.cc/38YU-EXL5 ................................................................ 4, 5

Greenpeace, *Misery at Sea* (May 2018), https://perma.cc/6WWM-JGMJ .............. 3

Greenpeace, *Seabound: The Journey to Modern Slavery on the High Seas*

(Dec. 2019), https://perma.cc/LXC4-E5NC .............................................. 3, 4

*Offense*, Black's Law Dictionary (8th ed. 2004) ............................................... 18

U.S. Dep't of State, *Report to Congress: Human Trafficking in the*

*Seafood Supply Chain Annex* (2020), https://perma.cc/KTF8-CF9B ................. 4

World Benchmarking Alliance, *Seafood Stewardship Index for Bumble*

*Bee* (2019), https://perma.cc/7RZH-KAL6 ................................................. 5

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

**INTRODUCTION**

Plaintiffs allege horrible mistreatment at the hands of vessel captains and crew on distant-water fishing vessels owned by two Chinese companies, operating in international waters, that supplied albacore tuna to Bumble Bee Foods, LLC (Bumble Bee). Bumble Bee unequivocally condemns forced labor and takes allegations of forced labor in its supply chain seriously. Indeed, when Bumble Bee learned of the allegations in the Complaint, it promptly instructed its suppliers to cease purchasing from the vessels at issue. Plaintiffs nonetheless seek to hold Bumble Bee—a U.S. company—liable under the Trafficking Victims Protection Reauthorization Act (TVPRA) and state negligence law for allegations of forced labor committed abroad by third parties somewhere in the supply chain. That limitless theory of liability would allow any manufacturer or retailer to be sued based on conduct by independent foreign actors anywhere in a global supply chain. This and other defects in the Complaint necessitate its dismissal.

*First*, Plaintiffs lack Article III standing for the broad forward-looking equitable relief they seek. Plaintiffs allege only past injuries; they do not allege that they are now working on fishing vessels or ever intend to again, let alone on vessels that might ultimately supply tuna to Bumble Bee. Plaintiffs' past injuries do not provide the requisite injury-in-fact to seek injunctive relief requiring Bumble Bee to implement policies regarding the employment practices of its indirect upstream suppliers—even setting aside the long, speculative causal chain necessary to assume that such policies would be heeded by independent third parties not before this Court.

*Second*, the Complaint fails to state a claim under the TVPRA's civil cause of action. That provision authorizes a forced-labor victim to bring a civil suit "against the perpetrator (or whoever knowingly benefits, . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). The Complaint tries to expand this provision— enacted to allow individuals to sue those who obtained their labor by force and those

1    who directly assist them—to impose liability at any stage in a multi-tier supply chain.
2    But downstream purchases alone do not support liability under the TVPRA.  And
3    Plaintiffs do not plausibly allege that Bumble Bee knew or had reason to know of the
4    violations that Plaintiffs allegedly suffered, or that Bumble Bee participated in a
5    venture with the entities or people that Plaintiffs claim abused them—the vessel
6    captains and Indonesian recruitment agencies.

7        *Third*, Plaintiffs' TVPRA claim is impermissibly extraterritorial because it
8    seeks to impose civil liability on Bumble Bee for injuries suffered overseas at the
9    hands of foreign actors.  U.S. statutes are presumed not to apply to extraterritorial
10   conduct, and nothing in the TVPRA defeats that presumption.  Because Plaintiffs'
11   claim arises from events overseas, it may not be pursued in a U.S. court.

12       *Finally*, the Court should dismiss Plaintiffs' negligence cause of action under
13   California law.  The Court has original jurisdiction over only the TVPRA claim; if
14   the Court dismisses that claim, it should decline supplemental jurisdiction over the
15   state law claim.  Plaintiffs also fail to plausibly allege a duty.  Allegations that
16   Bumble Bee was generally aware of an industry-wide issue do not mean that Bumble
17   Bee "had the ability to control" the individual bad actors that harmed Plaintiffs or
18   "was in the best position to do so."  *Brown v. USA Taekwondo*, 253 Cal. Rptr. 3d
19   708, 732 (Cal. Ct. App. 2019), *aff'd*, 483 P.3d 159 (Cal. 2021).

20       Again, Bumble Bee strongly condemns forced labor and has enacted policies
21   to promote responsible sourcing in its supply chain.  But developing an effective,
22   long-term solution would require the help of many actors, including governments.
23   The federal courts are the wrong forum for the forward-looking policy changes
24   Plaintiffs seek against a single company.  And neither the TVPRA's civil remedy
25   provision, nor state negligence law, is a proper vehicle for holding American
26   companies that are the buyers of foreign goods liable for injuries allegedly inflicted
27   abroad by foreign third-party suppliers on their foreign employees.  The Complaint
28   should be dismissed.

## BACKGROUND

Bumble Bee is an American seafood company that traces its roots back more than 125 years.  In 2020, Bumble Bee was sold to FCF Co. Ltd., a Taiwanese tuna trading company.  Compl. ¶ 14.[1]  "FCF is a major supplier to global seafood brands, including Chicken of the Sea, Bumble Bee, Princes, Frinsa, and SeaValue." Greenpeace, *Misery at Sea*, at 49 (May 2018), https://perma.cc/6WWM-JGMJ (cited at Compl. ¶ 80).[2]  "FCF does not own fishing fleets but instead works with around 600 fishing vessels that supply it with fish"; "[i]n turn, FCF supplies a range of dominant and well-known brands and manufacturers."  Greenpeace, *Choppy Waters*, at 22 (Mar. 2020), https://perma.cc/BWW3-VF3J (cited at Compl. ¶¶ 82, 84, 241).

***The Global Tuna Supply Chain.***  As the reports cited in the Complaint explain, "[t]he journey of a tuna can is usually long."  Greenpeace, *Fake My Catch*, at 5 (Sept. 2022), https://perma.cc/63GH-6HBV (cited at Compl. ¶¶ 93, 241).  The supply chain typically flows as follows:  Vessels harvest albacore tuna, which is then loaded onto a transshipment vessel along with fish from other vessels.  *See id.* at 6-8.  The transshipment vessel delivers the catch to port where it is picked up by a transport agency, which takes it to a processing facility, where the tuna is processed into loins before being imported to the U.S., canned, and distributed for sale.  *See* Greenpeace, *Seabound: The Journey to Modern Slavery on the High Seas*, at 14-15, 21 (Dec. 2019), https://perma.cc/LXC4-E5NC (cited at Compl. ¶ 81); *see also Choppy Waters*, *supra*, at 22 (describing "long and complex" supply chains "stretching from vessel building and crewing, fisheries operations on the water,

---

[1] Bumble Bee is a wholly-owned subsidiary of Bumble Bee Holding Company 1, which is wholly owned by FCF Americas, which is wholly owned by Besford Limited, which is wholly owned by Skymax International Corporation, which is wholly owned by FCF Co., LTD.

[2] Courts consider "matters of judicial notice" by motion or sua sponte, or documents incorporated by reference into the complaint, "without converting the motion to dismiss into a motion for summary judgment."  *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1072 (S.D. Cal. 2019) (Anello, J.) (citation omitted).

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

1    processing and manufacturing, and then distribution, retail and consumption").

2        Fishers are generally recruited by independent "manning agencies" with whom
3    the fishers sign contracts committing to a certain period of work aboard a fishing
4    vessel. Compl. ¶ 81. Those vessels are often owned by companies registered abroad.
5    *Seabound*, *supra*, at 15. The recruiter arranges transportation to the vessel's
6    departure point, which may also be in another country, and the vessel may fly a flag
7    from yet another country. *Id*. Vessels then travel to remote parts of the ocean, beyond
8    the territorial boundaries of any country. U.S. Dep't of State, *Report to Congress:
9    Human Trafficking in the Seafood Supply Chain Annex*, at 2 (2020),
10   https://perma.cc/KTF8-CF9B (cited at Compl. ¶¶ 55-57).

11       Forced labor in the distant-water fishing industry is a decades-old problem.
12   Compl. ¶¶ 59, 63. "Pinpointing the responsible parties behind forced labour is as
13   long and complex as the seafood supply chain." Greenpeace, *Forced Labor at Sea*,
14   at 4 (May 2021), https://perma.cc/38YU-EXL5 (cited at Compl. ¶ 90). According to
15   Plaintiffs' cited reports, "decreasing fish stocks are the driving force behind forced
16   labor in the industry"; "vessels venture further out to sea to access profitable fishing
17   grounds, and these distant water fishing vessels inherently isolate workers and
18   provide very limited means to escape or report abuses." *Fake My Catch*, *supra*, at 5.

19       "Combating human trafficking, including forced labor, in all its forms, is
20   particularly challenging to address within the seafood industry," as "enforcement of
21   even effective regulations is inherently more difficult in fisheries on the high seas."
22   *Human Trafficking in the Seafood Supply Chain*, *supra*, at 1-2. The "biggest
23   complication" "lies in the fact that the industry involves so many State actors,
24   meaning responsibility and accountability is often elusive." *Seabound*, *supra*, at 5.
25   It is therefore "no surprise that one migrant fisher's fate often lies in the hands of too
26   many actors, agencies and governments." *Id*. at 15. Activist groups, including
27   Greenpeace, believe that "*all* agents along the supply chain are responsible to a
28   certain extent for the proliferation of forced labour," and say that "a systemic shift"

is needed:  "Governments, manning agencies, the vessel itself and its owners, the buyers and processors including retailers are all part of a broken system" that needs comprehensive reform.  *Forced Labor at Sea*, *supra*, at 5.

**Bumble Bee Takes Steps To Combat Forced Labor In Its Supply Chain.**  In 2019, Bumble Bee was "commended as one of few canned tuna companies that have taken 'robust action to eliminate slavery from their supply chains.' "  Chris Eaton, *Why Bumble Bee Tuna Should Concern You*, Greenpeace (Mar. 19, 2020), https://perma.cc/3JSU-VPC3 (cited at Compl. ¶ 83) (quoting Business & Human Rights Resource Centre, *Out of Sight: Modern Slavery in Pacific Supply Chains of Canned Tuna, A Survey & Analysis of Company Action*, at 6 (June 2019), https://perma.cc/97LL-6P65).  As part of a "small, but welcome, cluster of leading companies," Bumble Bee has "implemented the most practical steps, in terms of both number and variety, to combat modern slavery."  *Out of Sight*, *supra*, at 4, 17.  These actions include "digital traceability of fish, protections for migrant fishers and restrictions on recruitment fees and on trans-shipment."  *Id.* at 4.

For example, Bumble Bee was one of the first to establish a public-facing traceability program with its "Trace My Catch" tool, allowing consumers to learn the origins of each can of tuna, salmon, or sardines.  Compl. ¶ 194; *see* Bumble Bee, Trace My Catch, https://www.bumblebee.com/tracemycatch (last visited June 2, 2025).  This "advanced traceability mechanism,"[3] makes Bumble Bee one of the few companies to have "mapped their entire supply chains."  *Out of Sight*, *supra*, at 16.

Bumble Bee also requires its direct suppliers to agree to a "Supplier Code of Conduct," stating that the supplier's "employees will work on a voluntary basis and will not be exploited for forced . . . labor."  *Fake My Catch*, *supra*, at 19.  Bumble Bee's suppliers must also agree "to comply with relevant laws and regulations regarding the working hours, resting hours, compensation and working environment

---

[3] World Benchmarking Alliance, *Seafood Stewardship Index for Bumble Bee* (2019), https://perma.cc/7RZH-KAL6 (cited at Compl. ¶ 239).

of their employees, including the guarantee of minimum wages and resting hours, allowing employees to refuse to work overtime, and to not be subjected to retaliation or punishment." *Id.* Suppliers must further "agree to be audited by Bumble Bee or a designated third party." *Id.*; *see also* Compl. ¶ 228.

Of course, Bumble Bee acknowledges—as would any responsible seafood company—that there is always "more work to do" in combatting forced labor in the global supply chain. Compl. ¶ 248.

***This Lawsuit.*** Plaintiffs are four Indonesian men who allege they experienced "physical abuse and violence" by "the captain" and/or "senior crew" while working on three albacore tuna fishing vessels: the *Run Da 5* (Plaintiff Akhmad), the *Lu Rong Yuan Yu 878* (Plaintiffs Angga and Muhammad Sahrudin), and the *Lu Rong Yuan Yu 211* (Plaintiff Muhammed Syafi'i). Compl. ¶¶ 5, 100, 116-118, 127, 138, 199-201. Plaintiffs allege that these vessels supplied tuna to FCF, which in turn supplied it to Bumble Bee. *See id.* ¶ 224 (alleging vessels supplied "Bumble Bee via FCF"); *id.* ¶¶ 82-83, 151, 168-169 (similar). Plaintiffs allege that Indonesian manning agencies recruited them, assisted them in obtaining passports and visas, and signed contracts directly with Plaintiffs that allegedly made it difficult for them to terminate their work. *Id.* ¶¶ 97-98, 107-110, 120-124, 132-133.

Plaintiffs did not sue these agencies or the people or entities that operated the foreign vessels on which they worked. Instead, they sued Bumble Bee, alleging violations of the TVPRA and California negligence law.[4] *Id.* ¶¶ 252-262, 263-270. Plaintiffs do not allege that Bumble Bee knew about Plaintiffs' alleged abuse by the vessel captains and crew. Rather, Plaintiffs assert that they were "isolated far from land," and so had "little to no means of . . . even reporting[] their conditions." *Id.*

---

[4] Plaintiffs did not sue Bumble Bee's ultimate parent company, FCF. Allegations regarding FCF do not state claims against Bumble Bee. *Cf. Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 145 S. Ct. 681, 686 (2025) ("[I]t is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations.") (citation omitted).

1  ¶ 33.  Plaintiffs also contend that forced labor is a problem in the industry generally

2  and allege that there have been public reports about forced labor on other fishing

3  vessels.  But many of the reports Plaintiffs describe do not identify any specific

4  vessels.  *See, e.g.*, *id.* ¶¶ 45, 48, 72.  As for the reports involving named vessels,

5  Plaintiffs do not allege that they encountered those vessels, *e.g.*, *id.* ¶ 52 (Aug. 2020

6  report about *Da Wang*), or that every named vessel is connected to Bumble Bee, *e.g.*,

7  *id.* ¶ 77 (discussing abuses on *Long Xing 629*).

8  Plaintiffs seek compensation for alleged injuries suffered on the vessels, plus

9  punitive and exemplary damages.  *Id.* ¶¶ 272-276.  Plaintiffs also seek "equitable

10  relief" requiring Bumble Bee "to implement, monitor (reporting the result), and

11  enforce" various policies as to its suppliers' employment practices.  *Id.* ¶ 278.

12  ## LEGAL STANDARD

13  "A federal court is presumed to lack jurisdiction in a particular case unless the

14  contrary affirmatively appears."  *Birch v. Fam. First Life, LLC*, No. 3:22-cv-00815,

15  2023 WL 2940020, at *8 (S.D. Cal. Apr. 13, 2023) (Anello, J.) (citation omitted).

16  "[T]he burden of establishing" standing "rests upon the party asserting jurisdiction."

17  *Walcoff v. Innofoods USA, Inc.*, No. 3:22-cv-01485, 2023 WL 3262940, at *2 (S.D.

18  Cal. May 4, 2023) (Anello, J.) (citation omitted).  "Where, as here, a case is at the

19  pleading stage, the plaintiff must clearly allege facts demonstrating each element" of

20  Article III standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation,

21  quotation marks, and ellipses omitted).  A "facial attack" on standing "accepts the

22  truth of the plaintiff's allegations but asserts that they are insufficient on their face

23  to invoke federal jurisdiction."  *Walcoff*, 2023 WL 3262940, at *2.  A facial attack is

24  resolved as a Rule 12(b)(6) motion to dismiss.  *Id.*

25  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient

26  factual matter, accepted as true, to state a claim to relief that is plausible on its face."

27  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted).

28  Labels, conclusions, blanket assertions, and "[t]hreadbare recitals" of the legal

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 7 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

1   elements are not "facts," and courts do not accept them as true for purposes of a

2   motion to dismiss.  *Id.* at 678-679; *see* Fed. R. Civ. P. 12(b)(6).

3                                    **ARGUMENT**

4   **I.    Plaintiffs Lack Standing To Seek Equitable Relief.**

5          Where, as here, plaintiffs seek both damages and injunctive relief, they must

6   allege standing "for each form of relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413,

7   431 (2021).  Just as a "plaintiff's standing to seek injunctive relief does not

8   necessarily mean that the plaintiff has standing to seek retrospective damages,"

9   standing to seek damages does not confer standing to seek injunctive relief. *Id.* at

10  436.  Because Plaintiffs fail to allege any facts to support standing for the equitable

11  relief they seek, *see* Compl. ¶¶ 278, 280, those claims for relief must be dismissed.

12         Plaintiffs allege only past injuries.  Plaintiffs contend they engaged in "months

13  of hard labor" on fishing vessels where they "were subjected to physical abuse and

14  violence, deprived of adequate food, and denied medical care." *Id.* ¶ 5.  Regardless

15  of whether those allegations satisfy the injury-in-fact requirement for retrospective

16  damages, *id.* ¶ 272, they cannot establish standing for the forward-looking equitable

17  relief Plaintiffs seek that would require Bumble Bee "to implement, monitor . . . , and

18  enforce" various policies. *Id.* ¶ 278.  "Past exposure to illegal conduct does not in

19  itself show a present case or controversy regarding injunctive relief." *City of Los

20  Angeles v. Lyons*, 461 U.S. 95, 95-96 (1983).  No new policy can redress Plaintiffs'

21  past alleged injuries. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)

22  ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into

23  federal court; that is the very essence of the redressability requirement.").

24         "To obtain forward-looking relief," Plaintiffs must instead allege "a substantial

25  risk of future injury that is traceable to the [ ] defendants and likely to be redressed

26  by an injunction against them." *Murthy v. Missouri*, 603 U.S. 43, 69 (2024); *see*

27  *Walcoff*, 2023 WL 3262940, at *6 ("To establish standing for injunctive relief, a

28  plaintiff must plead a 'threat of injury' that is 'actual and imminent, not conjectural

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 8 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

or hypothetical.'") (citations omitted).  But Plaintiffs do not allege *any* risk of future injury, let alone a "substantial" one.  *See Scheibe v. Livwell Prods., LLC*, No. 3:23-cv-00216, 2023 WL 4414580, at *9 (S.D. Cal. July 7, 2023) (Anello, J.) (a plaintiff "lacks standing to pursue injunctive relief" where he does not "plausibly allege an actual threat of future harm").  Most fundamentally, Plaintiffs do not allege that they are currently being subjected to forced labor, that they are currently working as tuna fishers, or that they intend to resume that work in the future.  Courts dismiss TVPRA claims for injunctive relief where, as here, "the Complaint only details past experiences" and does not allege that the plaintiffs are "under threat of repeated injury" in the future.  *Doe v. Lombardo*, 745 F. Supp. 3d 1109, 1121 (D. Nev. 2024); *see, e.g., Doe I v. Apple Inc.*, 96 F.4th 403, 413 (D.C. Cir. 2024) (plaintiffs allegedly forced to work as miners lacked standing to seek "entirely forward looking" injunctive relief where plaintiffs did "not explicitly allege that any of them are still miners"); *Charleston v. Nevada*, 830 F. App'x 948, 949 (9th Cir. 2020) (survivors of sex-trafficking and coerced prostitution who did not allege they would re-enter business "fail[ed] to show they are under threat of an actual and imminent injury").

Even if Plaintiffs had alleged a future intention to work as tuna fishers, that would not create "a sufficient likelihood that [Plaintiffs] will again be wronged in a similar way."  *City of Los Angeles*, 461 U.S. at 111; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (harm must be "certainly impending").  Plaintiffs rely on a textbook "highly attenuated chain of possibilities": the prospect that Plaintiffs at some unknown future date may work as fishers, may be employed by vessels that may supply tuna to FCF, which may in turn supply Bumble Bee, and may be subjected to forced labor by unknown third parties not before the Court.  *See Clapper*, 568 U.S. at 410.  Any "alleged danger is not imminent because an unpredictable chain of hypothetical events stands in the way."  *Alexandre v. Amazon.com, Inc.*, No. 3:22-cv-01459, 2024 WL 2445705, at *5 (S.D. Cal. May 23, 2024) (Anello, J.).

Causation and redressability are similarly lacking.  Plaintiffs do not allege a

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

risk of future harm traceable to Bumble Bee specifically, and "any future remedial impact" of enjoining Bumble Bee to implement certain policies "would be speculative" as to each Plaintiff. *Lombardo*, 745 F. Supp. 3d at 1122. And any injunction could not bind the nonparties discussed in the Complaint: the vessel captains and crew that Plaintiffs allege physically abused them; the manning agencies that Plaintiffs contend are responsible for unfair contracts; the owners of the vessels on which Plaintiffs worked; or FCF. *See Apple*, 96 F.4th at 413 (affirming dismissal of complaint where requested injunctive relief "would not bind the direct perpetrators of the unlawful labor, who are not before this court"). Nor could injunctive relief reach any other facet of the multi-actor industry in which Plaintiffs assert that there is a longstanding "pattern of endemic forced labor." Compl. ¶ 63. Courts have dismissed similar TVPRA claims in similar circumstances, where it was "entirely speculative" whether an injunction against a particular defendant "would thwart forced [labor]" in an industry in the future. *Apple*, 96 F.4th at 413.[5]

The claims for equitable relief, Compl. ¶¶ 278, 280, should thus be dismissed.[6]

---

[5] Plaintiffs' claims are not redressable for an additional reason: The court lacks the power to grant injunctive relief under the TVPRA or California negligence law. "[T]here is no redressability if a federal court lacks the power to" "prevent the claimed injury." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (citation omitted). The TVPRA creates a cause of action only to "recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a). By specifying the permissible remedies, the TVPRA makes clear that it does not authorize private parties to obtain injunctive relief. In fact, the TVPRA *does* create a cause of action "to enjoin" unlawful conduct in cases brought by the Attorney General, 18 U.S.C. § 1595A(a)—reflecting that "Congress knows how to authorize [injunctive relief] when it wants to provide for it." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 106 (1987). "That Congress failed to do so" for private parties "argues forcefully that such authorization was not its intention." *Id*. As for California law, "injunctive relief is not available as a remedy for negligence." *San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.*, No. 3:14-cv-04393, 2019 WL 11073502, at *3 (N.D. Cal. July 26, 2019).

[6] Plaintiffs' equitable relief claims are also "subject to dismissal" because Plaintiffs "fail[] to plead or otherwise explain" why the monetary relief they seek would be inadequate. *Scheibe*, 2023 WL 4414580, at *9; *accord Martinez v. Ford Motor Co.*, No. 3:22-cv-01082, 2023 WL 2977727, at *7 (S.D. Cal. Apr. 17, 2023) (Anello, J.).

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

## II.    Plaintiffs Fail To State A Claim Under The TVPRA.

Plaintiffs do not allege that Bumble Bee perpetrated any TVPRA violation against them; their theory of liability is that Bumble Bee "knowingly benefited" from violations committed by others.  Compl. ¶¶ 254-256.  To state a claim of beneficiary liability under the TVPRA, a plaintiff must allege that the defendant "(1) knowingly benefitted, (2) from participation in a venture [ ], (3) which they knew or should have known was engaged in conduct that violated the TVPRA."  *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022); *see* 18 U.S.C. § 1595(a).  Plaintiffs fail to plead both knowledge and participation in a venture.

### A.    The Complaint does not plausibly allege knowledge.

Plaintiffs fail to allege that Bumble Bee "knew or should have known of the specifically alleged TVPRA violations" in the Complaint.  *See Ratha*, 35 F.4th at 1177-78 (requiring "company-specific information" to infer knowledge).  "As numerous courts have held, it is not enough to allege that a defendant knew or should have known of labor abuses in a particular country or industry '*generally*.'"  *Mia v. Kimberly-Clark Corp.*, No. 1:22-cv-02353, 2025 WL 752564, at *4 (D.D.C. Mar. 10, 2025) (quoting *Ratha*, 35 F.4th at 1177), *appeal pending*, No. 25-7046 (D.C. Cir.).  That is true "even at the pleading stage."  *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 473 (E.D.N.C. 2024) (dismissing complaint because "general allegations of . . . trafficking in the hotel industry, and at other hotels, do not impute constructive knowledge"); *see S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (same, because "knowledge or willful blindness of a general . . . trafficking problem" in the industry "does not satisfy the *mens rea* requirements of the TVPRA").

The Complaint does not clear that bar.  Just as the Ninth Circuit held that reports and news articles about human trafficking in the Thai shrimp fishing industry failed to support an inference that the defendant knew or should have known about human trafficking at a specific shrimp factory, *Ratha*, 35 F.4th at 1177, Plaintiffs'

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

1  allegations about forced labor in the tuna industry generally, *see, e.g.*, Compl. ¶¶ 40-
2  51, 53-77, cannot establish that Bumble Bee knew or should have known about
3  forced labor on the three vessels Plaintiffs identify "in particular—which is the only
4  pertinent inquiry," *see Mia*, 2025 WL 752564, at *5.

5        Nor is it enough that Plaintiffs cite reports about forced labor on *other* vessels
6  that allegedly supplied tuna to Bumble Bee through its ultimate parent company. *See,*
7  *e.g.*, Compl. ¶¶ 81, 90, 93; *infra* pp. 15-16 (discussing FCF's role). Plaintiffs do not
8  claim that those sources described forced labor on "the specific [vessels] at issue in
9  this case." *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1025 (D.
10  Or. 2021) (general allegations about trafficking at defendants' hotels insufficient to
11  establish knowledge of trafficking at specific hotels). For that same reason, Plaintiffs
12  cannot "shore up their assertions of general knowledge by citing . . . statements
13  regarding potential labor issues in [Bumble Bee's] supply chains" writ large. *Mia*,
14  2025 WL 752564, at *5 (quotation marks omitted); *see, e.g.*, Compl. ¶¶ 78, 93.

15        Plaintiffs' assertion that Bumble Bee should have taken more proactive steps
16  to avert forced labor, *e.g.*, Compl. ¶¶ 93, 241-242, is likewise insufficient: "the
17  TVPRA imposes no such duty" to "proactively investigate and prevent" forced labor.
18  *42 Hotel Raleigh*, 717 F. Supp. 3d at 473. Plaintiffs also appear to fault Bumble Bee
19  for voluntarily establishing monitoring practices, like audits and the Trace My Catch
20  tool. Compl. ¶¶ 228, 250-251. Even setting aside that Plaintiffs are attempting to
21  use Bumble Bee's efforts to combat forced labor to prove liability, "allegations that
22  Defendants implemented means by which they could monitor" potential issues does
23  not establish the requisite knowledge. *A.B.*, 532 F. Supp. 3d at 1027. And to the
24  extent Plaintiffs seek to hold Bumble Bee liable based on the conduct of its "agents,"
25  Compl. ¶¶ 260-261, Plaintiffs fail to state a claim because—even if the TVPRA
26  recognized vicarious liability—Plaintiffs never identify who these "agents" are, what
27  acts they allegedly took or when or what knowledge they allegedly possessed, or
28  what facts support finding an agency relationship with Bumble Bee. *See Brinker v.*

*Axos Bank*, No. 3:22-cv-00386, 2022 WL 17724408, at *5 (S.D. Cal. Dec. 15, 2022) (Anello, J.) ("The plausibility standard demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement.") (citations and quotation marks omitted).

The Complaint's allegations about Fishery Improvement Projects (FIPs) and other environmental-certification programs do not establish knowledge either. *See* Compl. ¶¶ 158, 218-238; *see also id.* ¶¶ 217-218 (describing Marine Stewardship Council certification program). According to the Complaint, Bumble Bee used these FIPs to set "goals, strategies, and procedures" governing "fishing practices and strategies meant to increase sustainability," for example by controlling the type of bait used, and "monitored the participating vessels to ensure compliance." *Id.* ¶¶ 221, 226-228. The Complaint further alleges that *FCF* generally "tracked the number of crew members on the vessels in the FIPs" and was aware that the "crew members were predominantly Indonesian." *Id.* ¶¶ 230-231. The Complaint also alleges that "the two FIPs submitted a 'Self-Evaluation'" (although it does not say to whom) that identified certain "risk criteria" for forced labor, although the evaluation did not indicate that the FIPs had any knowledge of any forced labor occurring on the vessels participating in the FIPs. *Id.* ¶¶ 250-251.

None of that is enough to plead that Bumble Bee had the requisite knowledge. According to the Complaint, the FIPs were largely targeted at environmental sustainability, which has no bearing on the alleged forced labor. And the mere fact that FCF tracked certain statistics, or that the FIPs self-reported on unspecified risk factors but were "not sure" whether forced labor was occurring on the vessels, *id.* ¶ 251, does not establish that *Bumble Bee* knew or should have known that forced labor within the meaning of the TVPRA was actually occurring on particular vessels, let alone with respect to these particular Plaintiffs. *See, e.g., Mia*, 2025 WL 752564, at *5 (determination that audited suppliers "were not complying with [defendant's] own unspecified compliance requirements" does not establish that "the type of

1  noncompliance . . . found amounted to forced labor . . . as defined in the TVPRA").

2  The Complaint also does not establish that Bumble Bee "knew or should have

3  known about the [alleged forced labor] of the plaintiff[s] in particular"—as opposed

4  to forced labor on the vessels "in general." *Doe #9 v. Wyndham Hotels & Resorts,*

5  *Inc.*, No. 4:19-cv-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 29, 2021); *see Doe*

6  *(S.M.A.) v. Salesforce, Inc.*, No. 3:23-cv-0915, 2024 WL 1337370, at *15 (N.D. Tex.

7  Mar. 28, 2024) ("TVPRA requires constructive knowledge of the specific violation

8  sued upon") (collecting cases).  Indeed, the Complaint confirms Bumble Bee could

9  not have known about Plaintiffs' specific claims:  Plaintiffs were "isolated far from

10 land" with "little to no means of . . . even reporting[] their conditions." Compl. ¶ 33.

11 However, the Court "need not resolve whether" this "'specific victim' standard

12 applies," because Plaintiffs have not alleged knowledge of forced labor on the

13 relevant vessels in general at any relevant time.  *Mia*, 2025 WL 752564, at *6 n.7.

14 **B.    The Complaint does not plausibly allege participation in a venture.**

15 Plaintiffs independently fail to plausibly allege the required element of

16 "participation in a venture." *Ratha*, 35 F.4th at 1175; *see* 18 U.S.C. § 1595(a).  As

17 the D.C. Circuit has held, "participation in a venture" carries its "ordinary meaning":

18 "taking part or sharing in an enterprise or undertaking that involves danger,

19 uncertainty, or risk, and potential gain." *Apple*, 96 F.4th at 415.  "[P]urchasing a

20 commodity, without more" will not suffice. *Id.* at 416.

21 Plaintiffs allege that "Bumble Bee participated in a venture with FCF,

22 Rongcheng City (the owner of the vessel *Lu Rong Yu 878*) and Rongcheng Ocean

23 (the owner of vessels *Lu Rong Yu 211* and *Run Da 5*)," and that these "venture

24 participants all shared the goal of harvesting tuna for sale to consumers in the U.S.

25 market and of maximizing their profit."  Compl. ¶ 253.

26 That expansive definition of the supposed venture fails for three reasons.

27 *First*, Plaintiffs' forced-labor allegations depend on the Indonesian manning

28 agencies that recruited Plaintiffs.  Plaintiffs' assertion that they were "subjected to a

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

wage withholding scheme, deductions, penalties and fees," *id.* ¶ 257, relies on the paragraphs about the manning agencies, *see, e.g.*, *id.* ¶ 98 (allegations about wages and fees "to repay recruitment and administrative costs" under contract with manning agency); *id.* ¶ 110 (allegations about money owed under contract with "the Indonesian agency"); *id.* ¶ 124 (allegations about contractual terms with "the recruitment agency"); *id.* ¶ 133 (similar). But Plaintiffs' definition of the venture does not include any manning agencies, let alone the specific agencies that recruited Plaintiffs. Indeed, Plaintiffs do not allege that Bumble Bee has *any* connection whatsoever to these unnamed agencies. The TVPRA provides for liability only where the "venture . . . has engaged in an act" of forced labor. 18 U.S.C. § 1595(a). Because the Complaint alleges that actors *outside* the defined venture were the ones who "engaged in an act" of forced labor, *see* Compl. ¶¶ 98, 110, 124, 133, 257, Plaintiffs' contracting-related claims must be dismissed. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727-728 (11th Cir. 2021) (affirming dismissal based on how the plaintiffs "chose to frame the ventures at issue").

*Second*, the venture as defined by Plaintiffs also includes two different vessel owners, but Plaintiffs offer no facts to show those commercial competitors share "profits and risks." *See Apple*, 96 F.4th at 415. The Complaint actually indicates the opposite, asserting that the owners participated in different FIPs in different oceans. Compl. ¶¶ 222-223, 233, 236. And although those entities—like every other company—certainly have interests in "maximizing their profit," *id.* ¶ 253, that is not the "common purpose" required for a TVPRA "venture," *see Apple*, 96 F.4th at 416.

*Third*, insofar as the Complaint alleges that Bumble Bee contracted with or engaged with the vessels using FCF as a middleman, that is not sufficient to state a venture between Bumble Bee and the vessels. According to the Complaint, FCF serves as an intermediary between Bumble Bee and the vessel owners and manages "all activities involved in sourcing and procurement . . . for both" sides of the supply chain. Compl. ¶ 153; *see, e.g.*, *id.* ¶¶ 82-83, 151 (describing FCF as Bumble Bee's

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

"primary supplier," from which Bumble Bee sources 95% to 100% of tuna); *id.* ¶ 224 (alleging that vessels participating in the FIPs sell to "Bumble Bee via FCF"). Although the Complaint alleges that Bumble Bee and FCF jointly contracted with various processing plants on the backend, *see id.* ¶¶ 162, 164-166, it was FCF that allegedly "maintained long-term relationships" with a so-called "trusted network of boat owners" from which it "sourced the tuna it sends to the processing plants," *id.* ¶¶ 168-170; *id.* ¶¶ 174-190 (describing ways in which FCF allegedly supported this so-called trusted network).

The term "venture" refers to a discrete, "shared enterprise" where members "share in the . . . profits and risks." *Apple*, 96 F.4th at 415. "[S]omething more than engaging in an ordinary buyer-seller transaction is required." *Id.* But with respect to the vessels themselves, the Complaint alleges only vaguely that Bumble Bee "collaborated" with FCF to provide trainings on fish-catching techniques and to help vessels obtain environmental certifications that are "a necessity[] in the marketplace." Compl. ¶¶ 217-218, 227. That is not enough to establish the requisite "close cooperation between" the vessels and Bumble Bee in order to plead participation in a venture. *Apple*, 96 F.4th at 415; *see Mia*, 2025 WL 752564, at *4 (supplying necessary materials to produce goods is insufficient).

## III.   Plaintiffs' TVPRA Claim Is Impermissibly Extraterritorial.

Plaintiffs' TVPRA claim is also impermissibly extraterritorial. "Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 335 (2016). To rebut the presumption, the statute must contain "a clear, affirmative indication that it applies extraterritorially." *Id.* at 337. If the statute does not, a claim can proceed only if it "involves a domestic application of the statute." *Id.*

Neither step is satisfied here.

### A.   Congress did not clearly give § 1595 extraterritorial effect.

*RJR Nabisco* provides the governing framework to determine whether a

private right of action like § 1595 applies extraterritorially.  That case involved RICO which, like the TVPRA, has both substantive criminal prohibitions and a civil cause of action.  18 U.S.C. §§ 1962, 1964(c).  In such circumstances, "the presumption against extraterritoriality must be applied separately to both." *RJR Nabisco*, 579 U.S. at 350.  "It is not enough to say that a private right of action must reach abroad because the underlying law governs conduct in foreign countries"; "[s]omething more is needed" to demonstrate that Congress gave the private right of action extraterritorial reach.  *Id.*  Applying that rule, the Supreme Court held that although certain of RICO's substantive criminal prohibitions applied extraterritorially, the civil cause of action did not.  *Id.* at 338, 349-354.

The required "[s]omething more" is also absent from the TVPRA.  *Id.* at 350.  As the Ninth Circuit has acknowledged, on its face, "§ 1595 is silent as to its extraterritorial application."  *Ratha*, 35 F.4th at 1167-68 (reserving question of "whether § 1595 applies to foreign conduct").  It merely creates a cause of action for "[a]n individual who is a victim of a violation of this chapter."  18 U.S.C. § 1595(a).  "Thus, standing alone, [§ 1595] does nothing to rebut the presumption that it applies only domestically."  *Doe I v. Apple Inc.*, No. 1:19-cv-03737, 2021 WL 5774224, at *14 (D.D.C. Nov. 2, 2021), *aff'd*, 96 F.4th 403 (D.C. Cir. 2024) (affirming without reaching extraterritoriality).

The TVPRA does contain a provision that authorizes certain extraterritorial actions, but that provision does not apply to the civil cause of action.  Section 159**6** provides that "the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if" the alleged offender is a U.S. national, lawful permanent resident, or present in the U.S.  18 U.S.C. § 1596(a).  Section 159**5** is notably absent from that list.  "[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms."  *RJR Nabisco*, 579 U.S. at 339 (citation omitted).  That omission is

telling because Congress amended § 1595 at the same time it enacted § 1596. *Compare* Pub. L. No. 110-457, § 221(2), 122 Stat. 5044, 5067 (Dec. 23, 2008), *with* Pub. L. No. 110-457, § 223(a), 122 Stat. 5044, 5071 (Dec. 23, 2008); *see Daramola v. Oracle Am., Inc.*, 92 F.4th 833, 839 (9th Cir. 2024) (When "legislation explicitly provides one provision with extraterritorial reach, there is reason to doubt that Congress intended another provision without such language to apply overseas.") (citation, quotation marks, and brackets omitted).

Section 1596's text and structure show "it was focused on criminal, not civil, applications." *Apple*, 2021 WL 5774224, at *15. Section 1596 grants extraterritorial jurisdiction over "offenses"—a term Title 18 exclusively uses to refer to crimes. *Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter*, 575 U.S. 650, 658-659 (2015) (noting that although "offense" "appears hundreds of times in Title 18," "the Solicitor General" was unable "to find a single provision" using it "to denote a civil violation"); *Offense*, Black's Law Dictionary (8th ed. 2004) ("A violation of the law; a crime, often a minor one. See CRIME."). Section 1596(b) "confirms this criminal focus" by limiting extraterritorial "prosecutions of offenses" under § 1596(a). *Apple*, 2021 WL 5774224, at *15. Combined, this evidence shows that Congress's "omission of § 1595" from § 1596 "was not mistaken, but was an intentional decision not to extend" the civil cause of action extraterritorially. *Id.* at *16.

There are important policy reasons to separately ask whether a civil cause of action "manifests an unmistakable congressional intent to apply extraterritorially," even if the "presumption has been overcome" as to the "substantive prohibitions." *RJR Nabisco*, 579 U.S. at 339, 346 (citation omitted). As *RJR Nabisco* explained, "providing a private civil remedy for foreign conduct creates a potential for international friction beyond that presented by merely applying U.S. substantive law to that foreign conduct." *Id.* at 346-347. In the face of such risks, "the need to enforce the presumption is at its apex." *Id.* at 348. Indeed, those concerns are so stark in this context that Congress expressly limited when the TVPRA can be invoked

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

extraterritorially in criminal cases—only when the offender is a U.S. national, lawful permanent resident, or present in the U.S.—and specified that "[n]o prosecution may be commenced" in certain cases absent the approval of high-ranking Department of Justice officials.  18 U.S.C. § 1596(a)-(b).  Private plaintiffs, of course, are less "sensitive to foreign sovereigns' dignity" than the federal government.  *RJR Nabisco*, 579 U.S. at 349.  Yet Congress said nothing to suggest it intended to permit private enforcement based on conduct abroad at all, let alone without corresponding checks. In light of the careful safeguards Congress placed around criminal extraterritorial enforcement of the TVPRA by the government, it would be anomalous to read the statute's private civil provision as allowing even broader extraterritorial application.

The handful of cases to reach a contrary conclusion are readily distinguishable. In a few cases, the parties or the court assumed without analysis that § 1595 applied extraterritorially in assessing § 1596's retroactive effect.[7]  One court theorized that because § 1596 was enacted after two district courts declined to apply § 1595 abroad, Congress intended for § 1596 to displace the presumption as to § 1595.  *Ratha v. Phatthana Seafood Co.*, No. 2:16-cv-04271, 2016 WL 11020222, at *5 (C.D. Cal. Nov. 9, 2016).  But Congress must speak "affirmatively and unmistakably" to displace the presumption against extraterritoriality, *RJR Nabisco*, 579 U.S. at 335, and there is no indication in the text or legislative history that Congress knew about or was reacting to those decisions, *see United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 246 (1989) (a holding "recognized by only a few courts and often dependent on particular circumstances" is not the kind of "'rule' that we assume Congress was aware of").

Finally, two courts have found § 1595 applies extraterritorially in cases involving offenses committed by federal government contractors working abroad.

---

[7] *See Adhikari v. Kellogg Brown & Root*, 845 F.3d 184, 200 (5th Cir. 2017); *Plaintiff A v. Schair*, No. 2:11-cv-00145, 2014 WL 12495639, at *6 (N.D. Ga. Sept. 9, 2014); *Abafita v. Aldukhan*, No. 1:16-cv-06072, 2019 WL 6735148, at *5 (S.D.N.Y. Apr. 4, 2019), *R. & R. adopted*, 2019 WL 4409472 (S.D.N.Y. Sept. 16, 2019).

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 19 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

*Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019); *U.S. ex rel. Hawkins v. ManTech Int'l Corp.*, 752 F. Supp. 3d 118 (D.D.C. 2024).[8]  Both held that because "§ 1595 directly incorporates predicate offenses that govern foreign conduct," that supplies the requisite "clear, affirmative indication" that the civil cause of action also applies extraterritorially.  *Howard*, 917 F.3d at 241-242 (citation omitted); *see Hawkins*, 752 F. Supp. 3d at 132-134.  That is exactly what *RJR Nabisco* said was "not enough" to show that "a private right of action" extends abroad.  579 U.S. at 350.  *Howard* and *Hawkins* tried to distinguish *RJR Nabisco* on the theory that—unlike the TVPRA—RICO's civil cause of action is not coextensive with its criminal prohibitions.  *Howard*, 917 F.3d at 243; *Hawkins*, 752 F. Supp. 3d at 132.  But *RJR Nabisco* merely noted that, "[i]f anything," that "gap" "does not indicate extraterritorial application."  579 U.S. at 350.  As another court explained in rejecting this argument, "*RJR Nabisco* did not cite that fact as an *affirmative* reason that RICO's private right of action does not apply extraterritorially."  *Mia*, 2025 WL 752564, at *7.

     *Hawkins* also relied heavily on legislative history to find that § 1595 applies abroad.  As an initial matter, when the statute's "ordinary meaning and structure" is clear, legislative history has no role.  *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019).  Even setting that aside, *Hawkins* drew the wrong conclusions from the TVPRA's history.  The court noted that the TVPRA originally "included some extraterritorial offenses," that Congress later "added more extraterritorial provisions" when enacting § 1595, and that Congress subsequently enacted § 1596.  752 F. Supp. 3d at 133.  Based on this, *Hawkins* deemed it "inappropriate" to rely on § 1596 to "narrow[ ]" § 1595's scope.  *Id.*  But the question is not whether to *narrow* § 1595; it is whether Congress "affirmatively and unmistakably instructed that the statute" applies beyond U.S. borders.  *RJR Nabisco*, 579 U.S. at 335.  It has not.  The

---

[8]  The same district court simultaneously decided a "parallel case" involving "the same arguments" on the same grounds.  *Abernathy v. Carlyle Grp., Inc.*, No. 1:22-cv-03603, 2024 WL 5331993, at *1, 10-14 (D.D.C. Sept. 27, 2024).

1  legislative history just proves the point: Congress had many opportunities to make

2  clear that § 1595 applies extraterritorially, including when it amended § 1595 at the

3  same time it enacted § 1596 and in the three subsequent amendments to § 1595.[9]

4  Congress chose not to do so time and again.

5       In any event, *Howard* and *Hawkins* both relied on 18 U.S.C. § 3271(a), which

6  authorizes the extraterritorial application of certain laws when federal contractors or

7  employees commit crimes abroad. *Howard*, 917 F.3d at 244; *Hawkins*, 752 F. Supp.

8  3d at 134 (finding *Howard* "more analogous" than cases "in which the plaintiffs sued

9  only U.S.-based private manufacturers and not their foreign suppliers"). Those suits

10 "involve[d] what is essentially an extension of the United States government abroad."

11 *Hawkins*, 752 F. Supp. 3d at 134. That "key" context, *id.*, is missing here, *see Mia*,

12 2025 WL 752564, at *7 & n.9 (declining to follow those cases on this ground).

13   **B.    This case does not involve a domestic application of § 1595.**

14       Because there is no "clear, affirmative indication" that Congress extended

15 § 1595 extraterritorially, this suit cannot proceed unless it involves a domestic

16 application of § 1595. *RJR Nabisco*, 579 U.S. at 337. It does not.

17       To determine whether the case "involves a permissible domestic application"

18 of a statute, courts "look[] to the statute's 'focus,'" *id.*, meaning "the object[] of the

19 statute's solicitude," *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 267 (2010).

20 "[I]f the conduct relevant to the focus occurred in a foreign country, then the case

21 involves an impermissible extraterritorial application." *RJR Nabisco*, 579 U.S. at

22 337. The goal is to "separat[e] the activity that matters from the activity does not.

23 After all, . . . the presumption would be meaningless if any domestic conduct could

24 defeat it." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 419 (2023).

25 As multiple courts have recognized, the TVPRA's "focus" "will naturally fall where

26

_____

[9] Pub. L. No. 110-457 §§ 221(2), 223, 122 Stat. 5044, 5067, 5071 (Dec. 23, 2008);
Pub. L. No. 114-22 § 120, 129 Stat. 227, 247 (May 29, 2015); Pub. L. No. 115-164
§ 6, 132 Stat. 1253, 1255 (Apr. 11, 2018); Pub. L. No. 117-347 § 102, 136 Stat. 6199,
6200 (Jan. 5, 2023).

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

the [TVPRA] violation occurred." *Apple*, 2021 WL 5774224, at \*16; *accord Mia*, 2025 WL 752564, at \*8; *see, e.g.*, *Adhikari v. KBR Inc.*, No. 4:16-cv-02478, 2017 WL 4237923, at \*3 (S.D. Tex. Sept. 25, 2017) ("the focus of the TVPRA is where the forced labor occurred and to where victims were trafficked") (citation, quotation marks, and ellipses omitted); *Tanedo v. E. Baton Rouge Parish Sch. Bd.*, No. 8:10-cv-01172, 2012 WL 5378742, at \*6 (C.D. Cal. Aug. 27, 2012) (similar).

The Complaint does not allege that any conduct relevant to the TVPRA's focus—the alleged TVPRA violations—occurred in the United States.[10]  Although the Complaint does not specify the locations of many events, this much is clear: Plaintiffs are Indonesian citizens who allege that they contracted with manning agencies abroad, to work on vessels overseas, where they were subjected to abuse and violence by third parties. Compl. ¶¶ 8-11, 96, 107, 132.  Plaintiffs do not allege they were forced to labor in the United States or that they suffered any injuries here.

The only alleged U.S. nexus is that Bumble Bee imported and sold tuna products in this country, supposedly benefitting from TVPRA violations abroad.  *See id.* ¶¶ 7, 12.  But § 1595 "does not create a new violation merely for benefitting from other violations"; it "merely identifies *who* can be sued"—the perpetrators of or those who knowingly benefit from substantive violations.  *Apple*, 2021 WL 5774224, at \*16; *cf. Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 716 (D.C. Cir. 2022) (finding gravamen of TVPRA claim under the Foreign Sovereign Immunities Act is what "itself gives rise to a cause of action," as opposed to actions that are "wrongful based only on other conduct").  "Because all the relevant conduct regarding [the alleged TVPRA] violations took place outside the United States," that ends the inquiry.  *RJR Nabisco*, 579 U.S. at 337 (citation and quotation marks omitted).

---

[10] "[I]f all the conduct regarding the violations took place outside the United States, then courts do not need to determine the statute's focus."  *Abitron Austria*, 600 U.S. at 419 (citation, quotation marks, and alterations omitted).  Because that is the case here, the Court could reject Plaintiffs' claim without addressing the TVPRA's focus.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

**IV.    Plaintiffs' California Negligence Claim Should Be Dismissed.**

Plaintiffs' claim under California Code of Civil Procedure § 1714, which codifies common-law negligence standards, should be dismissed for two reasons.[11]

*First*, the Court should decline supplemental jurisdiction over Plaintiffs' state-law claim.  If a court dismisses federal claims over which it had original jurisdiction, the court may decline supplemental jurisdiction over "pendent state-law claims." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see* 28 U.S.C. § 1367(c)(3).  This "is a doctrine of discretion, not of plaintiff's right."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (citation omitted).

Here, Plaintiffs failed to state a TVPRA claim; that is the only claim over which this Court had original jurisdiction.  As the Ninth Circuit has "often repeated," "in the usual case in which all federal-law claims are eliminated before trial," "economy, convenience, fairness, and comity" all "point toward declining to exercise jurisdiction over the remaining state law claims."  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citations omitted).  Courts routinely decline supplemental jurisdiction over state-law negligence claims in that situation.  *See, e.g.*, *Moffitt v. County of San Diego*, No. 3:24-cv-01445, 2024 WL 4774900, at *6 (S.D. Cal. Nov. 13, 2024) (Anello, J.); *Rodriguez-Rincon v. County of San Diego*, No. 3:07-cv-00562, 2009 WL 10671897, at *2 (S.D. Cal. June 30, 2009) (Anello, J.).  Courts also regularly decline supplemental jurisdiction over state-law claims after dismissing TVPRA claims.[12]  The same result is warranted here.

*Second*, even if this Court were inclined to exercise supplemental jurisdiction,

---

[11] Federal courts sitting in diversity apply the choice-of-law rules of the forum state, meaning California's choice-of-law rules apply.  *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987).  Bumble Bee reserves the right to argue that another forum's law applies under California's choice-of-law rules.

[12] *See, e.g.*, *Reed v. Barnes*, No. 3:24-cv-01500, 2025 WL 963072, at *4 (N.D. Tex. Mar. 31, 2025); *Catelyn H. v. G6 Hosp., LLC*, No. 2:24-cv-00939, 2025 WL 929032, at *5 (D. Nev. Mar. 26, 2025); *Domenici v. Murphy*, No. 1:21-cv-11310, 2021 WL 12334603, at *2 (D. Mass. Nov. 3, 2021).

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

1    the Complaint fails to adequately plead a negligence claim.  To plead negligence, "a

2    plaintiff must allege facts showing a legal duty to use due care, breach of the duty,

3    causation, and damages." *Brown*, 253 Cal. Rptr. 3d at 722.

4        The duty element is dispositive here.  There is no general "duty to control the

5    conduct of another, nor to warn those endangered by such conduct." *Regents of Univ.*

6    *of Cal. v. Superior Ct.*, 413 P.3d 656, 663-664 (Cal. 2018) (citation omitted).  As a

7    result, "[a] person who has not created a peril is not liable in tort merely for failure

8    to take affirmative action to assist or protect another unless there is some relationship

9    between them which gives rise to a duty to act."  *Id.* at 664 (citation omitted).[13]  A

10   qualifying "special relationship" can arise (1) through the defendant's ability to

11   control the third-party wrongdoer who harmed the plaintiff, or (2) where the plaintiff

12   depends on the defendant for protection and the defendant "has superior control over

13   the means of protection."  *Id.* at 664-665.  "The key in each special relationship is

14   that the defendant's relationship with the tortfeasor places the defendant in the best

15   position to protect against the risk of harm."  *Brown*, 253 Cal. Rptr. 3d at 723

16   (citation, quotation marks, and alterations omitted).

17       The Court of Appeal's decision in *Brown* is instructive.  Minors who were

18   sexually assaulted by their Olympic taekwondo coach sued the sport's governing

19   body (USAT) and the Olympic Committee.  The court found that USAT had a duty

20   to the minor plaintiffs.  Athletes were required to be members of USAT and to train

21   under coaches registered with and supervised by USAT, which controlled coaches

22   through its policies and procedures.  *Id.* at 725-726.  But the Olympic Committee did

23   not have a duty to the plaintiffs.  The Olympic Committee had the ability to control

24   USAT, but not the coach; that "indirect control over [the defendant] through [the

25

26   [13] "[P]laintiffs alleging a defendant had a duty to protect them must establish: (1) that
     an exception to the general no-duty-to-protect rule applies and (2) that the *Rowland*
27   factors support the imposition of the duty." *Brown*, 253 Cal. Rptr. 3d at 723 (citation
     omitted).  Because no special relationship exists, and thus no exception to the general
28   no-duty rule applies, there is no need to consider the second question.  *Id.* at 732.

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

1    Committee's] regulation of" USAT was "too remote to create a special relationship."

2    *Id.* at 732.  For these same reasons, the Olympic Committee was not "in the best

3    position to protect plaintiffs from [their coach's] sexual abuse." *Id.* at 731.

4         So too here.  The Complaint describes horrible abuses suffered at the hands of

5    staffing agencies and vessel captains.  Compl. ¶¶ 97-143.  The staffing agencies that

6    facilitated the situations that allowed for Plaintiffs' forced labor and the vessel

7    owners that controlled the vessel captains and crew who perpetrated the direct abuse

8    were "in the best position" to prevent the harms Plaintiffs suffered.  *Brown*, 253 Cal.

9    Rptr. 3d at 723; *see, e.g.*, Compl. ¶¶ 100, 102, 105, 116-118, 127, 138-141, 143

10   (describing abuses by the "captain" and "senior crew").  But the Complaint does not

11   allege that Bumble Bee controlled the staffing agencies.  *See* Compl. ¶ 253; *supra*

12   pp. 14-15.  As for the vessel owners, the Complaint does not allege that Bumble Bee

13   had adequate control over the vessels as required to plead a venture.  *See supra* pp.

14   15-16.  But even setting that aside, here, as in *Brown*, "Plaintiffs have not alleged any

15   relationship between [the defendant] and [the third parties who harmed them] other

16   than [the defendant's] ability to control the policies adopted by" an intermediary that

17   directly supervised and controlled those third parties.  253 Cal. Rptr. 3d at 732.  Even

18   allegations that Bumble Bee was "aware generally of" the issue do not mean that

19   Bumble Bee "had the ability to control" individual bad actors or "was in the best

20   position to do so." *Id.*[14]  Plaintiffs' negligence claim should be dismissed.

## CONCLUSION

22        Plaintiffs' injunctive-relief claims should be dismissed for lack of standing and

23   the remaining claims dismissed for failing to state a claim or for lack of jurisdiction.

24

---

25   [14] Plaintiffs have not plausibly alleged that Bumble Bee was in a joint venture with

26   the crewmembers that harmed them.  *See Brown*, 253 Cal. Rptr. 3d at 734 (explaining
     a joint venture requires an agreement "to share in the profits and losses of the joint

27   venture").  The Complaint's cursory reference to an agency relationship, Compl.
     ¶ 269, is likewise insufficient to create a duty.  *See supra* pp. 12-13; *Brown*, 253 Cal.

28   Rptr. 3d at 734-736 (explaining agency relationship requires control and ratification).

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 25 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:25-cv-00583-MMA-DEB

1    Respectfully submitted,

2    Dated:  June 2, 2025

3    HOGAN LOVELLS US LLP

4    By:    */s/ Vassi Iliadis*

5    Vassi Iliadis

6    *Counsel for Defendant*
     Bumble Bee Foods, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28