# Ex. A to Motion for Leave

Dan Stormer, Esq. [S.B. #101967]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile:  (626) 577-7079
Emails: dstormer@hadsellstormer.com

Attorney for Amicus Curiae,

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKHMAD, ANGGA, MUHAMAD SAHRUDIN, and MUHAMMAD SYAFI'I<br><br>Plaintiffs,<br><br>v.<br><br>BUMBLE BEE FOODS, LLC<br>280 10ᵗ Avenue<br>San Diego, CA 92101<br><br>Defendant. | Case No.: 3:25-cv-00583-MMA-DEB<br><br>**BRIEF OF *AMICUS CURIAE* OF WILLIAM S. DODGE**<br><br>*[NO ORAL ARGUMENT PURSUANT TO LOCAL RULE]*<br><br>Judge: Hon. Michael M. Anello<br>Courtroom: 3C<br><br>Action Filed: March 12, 2025 |

BRIEF OF *AMICUS CURIAE*
OF WILLIAM S. DODGE

## I. INTEREST OF AMICUS[1]

Amicus William S. Dodge is Lobingier Professor of Comparative Law and Jurisprudence at the George Washington University Law School and Martin Luther King, Jr. Professor Emeritus at the UC Davis School of Law. Professor Dodge is an expert on the exterritorial application of statutes, whose publications include *The New Presumption Against Extraterritoriality*, 133 Harv. L. Rev. 1582 (2020), and *Presumptions Against Extraterritoriality in State Law*, 53 U.C. Davis L. Rev. 1389 (2020). He currently serves as a Reporter for the American Law Institute's Restatement (Fourth) of Foreign Relations Law. As a Reporter for the first phase of the Restatement (Fourth), published in 2018, he drafted (among other provisions) § 404 restating the federal presumption against extraterritoriality. Professor Dodge also served as Counselor on International Law to the Legal Adviser at the U.S. Department of State from 2011 to 2012.

Amicus has an interest in the proper application of the presumption against extraterritoriality to federal statutes in general and to the Trafficking Victims Protection Reauthorization Act (TVPRA) in particular. He believes his expertise may be of assistance to the Court.

## II. ARGUMENT

Plaintiffs have brought civil claims under § 1595(a) of the Trafficking Victims Protection Reauthorization Act (TVPRA) based on Defendant's alleged violation of § 1589(b). Section 1589(b) provides: "Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in [forced labor], knowing or in reckless disregard of the fact that the venture has engaged in [forced labor], shall be punished as provided in subsection (d)." This provision has two significant implications for the question of extraterritoriality, implications that

---

[1] Amicus and his counsel have authored the entirety of this brief, and no person other than amicus or his counsel has made a monetary contribution to the preparation or submission of this brief.

BRIEF OF *AMICUS CURIAE* OF WILLIAM S. DODGE                -1-

Defendant's Motion to Dismiss appears to overlook.

First, when a civil claim is based on a violation of § 1589(b) by a company that benefited in the United States from forced labor abroad, the claim does not require extraterritorial application of the statute. This is because the offense—benefiting from forced labor—occurred in the United States. For such claims, it is thus unnecessary for the Court to address how the TPVRA's extraterritoriality provision, 18 U.S.C. § 1596(a), applies to either § 1589(b) or § 1595(a).

Second, even if Plaintiffs' claims did require extraterritorial application of the TPVRA, the requirements for such application would be met based on the facts alleged. Section 1596(a) expressly provides that six of the TVPRA's offenses, including forced labor under § 1589, apply extraterritorially when "an alleged offender is a national of the United States," a permanent resident, or present in the United States. It is undisputed that the Defendant is a U.S. national. Contrary to Defendant's argument, *see* MTD at 16-22, § 1595(a)'s cause of action applies extraterritorially to the same extent as the offenses on which claims are based.

### A. The Statutory Scheme

In 2008, Congress made three significant changes to the TVPRA. *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044. First, it amended the civil cause of action, 18 U.S.C. § 1595(a), to cover all violations of Chapter 77 and to impose liability on knowing beneficiaries. Today § 1595(a) provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) ….

Under § 1595(a), the civil cause of action applies to both perpetrators and beneficiaries (assuming, with respect to beneficiaries, that the requirements of knowingly benefiting,

"participation in a venture," and knowledge are met).

Second, Congress added § 1596(a), which expressly provides that six TVPRA offenses apply extraterritorially if "an alleged offender" is a U.S. national, U.S. permanent resident, or present in the United States. These offenses include forced labor under § 1589.

Third, Congress amended § 1589 by adding subsection (b). Section 1589(b) makes it an offense not only to engage in forced labor but also to "knowingly benefit" from "participation in a venture" that has engaged in forced labor, "knowing or in reckless disregard of the fact that the venture has engaged in [forced labor]."

A person who violates § 1589(b) by benefiting from forced labor is a "perpetrator" under § 1595(a). This means that it may be sued directly for its own offense without having to meet the additional requirements for beneficiary liability, such as "participation in a venture" and "knew or should have known." To be sure, § 1589(b) imposes its own "participation in a venture" and "knowing or in reckless disregard" requirements. But for claims under § 1595(a) based on violations of § 1589(b), the venture and knowledge requirements are imposed as elements of the offense under § 1589(b) rather than as requirements for beneficiary liability under § 1595(a).[2]

A person who violates § 1589(b) by benefiting from forced labor is also "an alleged offender" under § 1596. This means that, if the person is a U.S. national like the Defendant, § 1589(b) would apply extraterritorially.

### B. Plaintiffs' Claims Do Not Require Extraterritorial Application of the TVPRA

In this case, it is unnecessary to address the questions of extraterritoriality that Defendant raises in its Motion to Dismiss because the alleged offense on which Plaintiffs' claims are based occurred in the United States. As the Ninth Circuit has noted, "whether a statute applies abroad concerns 'what conduct' the statute prohibits."

---

[2] Amicus does not address the interpretation of these requirements.

BRIEF OF *AMICUS CURIAE*
OF WILLIAM S. DODGE
-3-

*Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1168 (9th Cir. 2022) (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010)). Under § 1589(b), the prohibited conduct is "knowingly benefit[ing]" from forced labor.

In *Rodriguez v. Pan American Health Organization*, 29 F.4th 706 (D.C. Cir. 2022), the D.C. Circuit held that the act of benefiting from forced labor under § 1589(b) occurs in the United States. *Id.* at 715-17. *Rodriguez* was an immunity case not an extraterritoriality case, but the question of where a benefit occurs is the same in both contexts. The Plaintiffs in *Rodriguez* brought claims under § 1595(a) against the Pan American Health Organization (PAHO) for violating § 1589(b) by benefiting from forced labor in connection with a program that sent Cuban doctors to Brazil. To determine whether PAHO was immune from suit under the International Organizations Immunities Act (IOIA), the D.C. Circuit had to decide whether the claim was "based upon a commercial activity *carried on in the United States*." 28 U.S.C. § 1605(a)(2) (emphasis added).[3] The Court held that this exception to immunity applied because "[t]he 'financial benefit' that violates § 1589(b) is itself 'wrongful conduct' and occurred in the United States." *Rodriguez*, 29 F.4th at 716.

PAHO had argued that, in deciding what the claim was "based upon," the Court "should look to what 'actually injured' the [Plaintiffs]." *Id.* at 715. But the D.C. Circuit rejected that argument. Under § 1589(b), the Court explained, the financial benefit "itself gives rise to a cause of action." *Id.* at 716. "[W]e consider … *that* alleged wrongful conduct," the Court explained, "rather than any harm that may result elsewhere." *Id.* (emphasis in original). "Apart from the wrongful conduct PAHO allegedly participated in abroad," the Court continued, "the [Plaintiffs] also allege wrongful conduct that occurred entirely within the U.S." *Id.*

---

[3] Under the IOIA, "[i]nternational organizations … shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments." 22 U.S.C. § 288a(b). This led the Court to consider whether the Foreign Sovereign Immunities Act's commercial activity exception, 28 U.S.C. § 1605(a)(2), applied.

That is equally true in this case. Here, Plaintiffs have alleged that Defendant engaged in conduct that "occurred entirely within the U.S.," *id.*, the act of benefiting from forced labor in violation of § 1589(b). That financial benefit is "itself 'wrongful conduct' and occurred in the United States." *Id.* Because Defendant's alleged violation of § 1589(b) occurred in the United States, there is no need for this Court to address Defendant's extraterritoriality arguments.

### C. The TVPRA Would Also Apply Extraterritorially Because Defendant Is a U.S. National and § 1595(a) Extends as Far as the Offense on Which a Claim Is Based

In the alternative, if this Court believes that Plaintiffs' claims do involve an extraterritorial application of the TVPRA, § 1596(a)'s requirements are satisfied because the Defendant is a U.S. national and because § 1595(a)'s cause of action applies extraterritorially to the same extent as the offenses on which claims are based.

#### 1. Defendant Is a U.S. National

As discussed in Part I.A, § 1596(a) expressly provides that six TVPRA offenses, including forced labor under § 1589, apply extraterritorially if "an alleged offender" is, among other things, "a national of the United States." 18 U.S.C. § 1596(a). "In context, the 'offender' is one who directly violates" any of the six provisions listed in § 1596(a). *F.C. v. Jacobs Solutions Inc.*, No. 23-CV-02660-CYC, 2025 WL 1766069, at *12 (D. Colo. June 26, 2025). For these purposes, it does not suffice that a defendant who is sued only as a beneficiary under § 1595(a) is a U.S. national, because such a beneficiary is not an "offender." *See id.*

In this case, however, the Defendant is alleged to have directly violated one of the six provisions by benefiting from forced labor under § 1589(b). This makes the Defendant an "alleged offender" for purposes of § 1596(a). Because it is undisputed that the Defendant is a U.S. national, § 1589(b) would apply extraterritorially in this case.

/ / /

### 2. Section 1595(a) Extends as Far as the Offense on Which a Claim Is Based

The only remaining question is whether § 1595(a)'s cause of action applies extraterritorially to the same extent as the offense on which it is based—here, § 1589(b). Defendant argues that it does not, relying on two decisions by the same District Judge in the District of Columbia. *See* MTD at 16-22 (relying on *Doe I v. Apple Inc.*, No. 1:19-CV-03737 (CJN), 2021 WL 5774224 (D.D.C. Nov. 2, 2021), *aff'd on other grounds*, 96 F.4th 403 (D.C. Cir. 2024); *Mia v. Kimberly-Clark Corp.*, No. 1:22-CV-02353 (CJN), 2025 WL 752564 (D.D.C. Mar. 10, 2025)).[4]

Every other court to have addressed this question has held that the TVPRA's cause of action applies extraterritorially to the same extent as the offenses on which the claims are based. *See Roe v. Howard*, 917 F.3d 229, 241-43 (4th Cir. 2019); *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 204 (5th Cir. 2017); *F.C. v. Jacobs Solutions Inc.*, No. 23-CV-02660-CYC, 2025 WL 1766069, at *9-14 (D. Colo. June 26, 2025); *U.S. ex rel. Hawkins v. ManTech Int'l Corp.*, 752 F. Supp. 3d 118, 131-35 (D.D.C. 2024); *Abernathy v. Carlyle Grp., Inc.*, No. CV 22-3603 (ABJ), 2024 WL 5331993, at *10-14 (D.D.C. Sept. 27, 2024); *Abafita v. Aldukhan*, 2019 WL 6735148, at *5 (S.D.N.Y 2019); *Ratha v. Phatthana Seafood*, 2016 WL 11020222, at *5-6 (C.D. Cal. Nov. 9, 2016).[5]

---

[4] Both decisions were appealed. In *Apple*, the D.C. Circuit affirmed the District Court's dismissal on other grounds without reaching the extraterritoriality question. 96 F.4th at 414 n.4. In *Mia*, the appeal is pending.

[5] On appeal in *Ratha*, the Ninth Circuit found it unnecessary to answer the question. *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1168 (9th Cir. 2022). Defendant would distinguish *Howard*, *Hawkins*, and *Abernathy* on the ground that the TVPRA applied extraterritorially in those cases under 18 U.S.C. § 3271(a), which extends the TVPRA to federal employees abroad, rather than under § 1596(a). MTD at 21. But the holding that the TVPRA's cause of action applies extraterritorially to the same extent as the offenses on which the claims are based does not logically depend on which provision

Under *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016), a court applying the presumption against extraterritoriality must first look for "a clear, affirmative indication" of extraterritoriality. *Id.* at 337.[6] Defendant argues that § 1595(a) is silent about its geographic scope. MTD at 17. As the Supreme Court explained in *RJR*, however, "an express statement of extraterritoriality is not essential." 579 U.S. at 340; *see also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010) (the presumption is not a "clear statement rule"). "Assuredly context can be consulted as well." *RJR*, 579 U.S. at 340 (quoting *Morrison*, 561 U.S. at 265).

In *RJR*, the Supreme Court found a clear indication of extraterritoriality in the "structure" of the statute, reasoning that "RICO's incorporation of extraterritorial predicates gives RICO commensurate extraterritorial effect." 579 U.S. at 340. The same is true of the TVPRA's civil cause of action, which provides: "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator [or a knowing beneficiary]." 18 U.S.C. § 1595(a). Just as with RICO, the Fourth Circuit explained in *Howard*,

> the TVP[R]A's civil remedy provision directly incorporates a set of predicate offenses "that plainly apply to at least some foreign conduct." … Thus, pursuant to *RJR Nabisco*, "Congress's incorporation" of such "extraterritorial predicates" into § 1595 "gives a clear, affirmative indication" that § 1595 provides a civil remedy for the foreign conduct that is prohibited by chapter 77. That is, § 1595

---

extends the offenses extraterritorially. Under the plain language of § 1595(a), if a "violation of this chapter" has occurred, the "victim" may sue the perpetrator or beneficiary. 18 U.S.C. § 1595(a).

[6] In *RJR*, the Supreme Court articulated a "two-step framework" for applying the presumption against extraterritoriality. *Id.* at 337. When "there is a clear indication at step one that [a statute] applies extraterritorially," a court does "not proceed to the 'focus' step." *Id.* at 342. Amicus therefore does not address the second step of the presumption analysis.

BRIEF OF *AMICUS CURIAE* OF WILLIAM S. DODGE                -7-

applies extraterritorially to the extent that the particular predicate offense supporting a specific claim applies extraterritorially.

917 F.3d at 242 (quoting *RJR*, 579 U.S. at 338-39).

Further context for the TVPRA's cause of action is provided by 22 U.S.C. § 7105(c)(3)(A)(iii), which says that the Secretary of State "shall permit an alien described in clause (i) who has filed a civil action under section 1595 of Title 18 to remain in the United States until such action is concluded."[7] Congress added this provision in 2008, at the same time it expanded the TVPRA's civil cause of action and added § 1596(a) extraterritoriality provision. As a Magistrate Judge recently observed in a thorough opinion, "[a]n interpretation that limits section 1596's reach to criminal prosecutions would render section 7105's protections illusory for any alien who had suffered trafficking abroad." *Jacobs Solutions*, 2025 WL 1766069, at *12.

Defendant asks the Court to draw a negative inference from the fact that the TVPRA's extraterritoriality provision, § 1596(a), does not include § 1595 in its list of offenses. As the District Court explained in *Hawkins*, however, "that would not have made sense. Section 1596(a) listed 'offenses' over which courts would have extraterritorial jurisdiction, and section 1595 is not an 'offense'—it is a free-standing provision that creates a civil remedy for an 'offense,' that is, any 'violation of this chapter.'" *Hawkins*, 752 F. Supp. 3d at 133. Moreover, because § 1595 already provided a civil remedy that was coextensive with the TVPRA's predicate criminal provisions, it would have been redundant to include § 1595 in § 1596. Logically, all that Congress needed to do to extend § 1595's civil remedy extraterritorially was to change the extraterritorial scope of the criminal offenses to which it referred.

---

[7] Clause (i) provides: "If a Federal law enforcement official files an application stating that an alien is a victim of a severe form of trafficking and may be a potential witness to such trafficking, the Secretary of Homeland Security may permit the alien to remain in the United States to facilitate the investigation and prosecution of those responsible for such crime." 22 U.S.C. § 7105(c)(3)(A)(i).

1 	Defendant analogizes § 1595(a) not to RICO's criminal provision, which *RJR* held to apply extraterritorially, but rather to RICO's civil cause of action, which *RJR* held not to apply extraterritorially. MTD at 17. As *Howard* explained, however, that part of the *RJR* opinion "depended on factors that do not apply to § 1595 of the TVPRA." *Howard*, 917 F.3d at 243. First, RICO's civil cause of action, 18 U.S.C. § 1964(c), "does not directly incorporate any extraterritorial predicates." *Id.* It refers instead to RICO's criminal prohibition, 18 U.S.C. § 1962, which in turn refers to extraterritorial predicates. Second, *RJR* "emphasized that the text of § 1964(c) limited its application to certain types of injuries, and thereby created a gap between the reach of § 1964(c) civil liability and § 1962 criminal liability." *Id.* The text of section 1595, by contrast "shows that it applies coextensively with its predicate offenses, omitting any qualifying or modifying language." *Id.* Third, RICO's civil cause of action "contained no other indication that it should apply extraterritorially." *Id.* The TVPRA "more clearly targets foreign conduct than any provision of RICO, as demonstrated by its international scope and Congress's repeated expansions of its extraterritorial reach." *Id.* In short, the TVPRA's civil cause of action is more closely analogous to RICO's criminal provisions than to RICO's civil cause of action.

	Defendant also invokes "important policy reasons" for limiting the extraterritorial application of civil remedies. MTD at 18. Congress, however, has weighed these considerations. "Viewed as a whole," the Fourth Circuit noted, the TVPRA "represents a far-reaching congressional effort to combat transnational human trafficking on numerous fronts, including by expanding the civil claims and remedies available to its victims." *Howard*, 917 F.3d at 242. "This is, in short, a situation in which Congress was clearly concerned with international rather than purely domestic matters." *Id.*

/ / /

/ / /

/ / /

BRIEF OF *AMICUS CURIAE*
OF WILLIAM S. DODGE

-9-

### III. Conclusion

This Court should follow the overwhelming majority of decisions that have previously addressed the extraterritoriality issue and hold that the TVPRA's cause of action apply extraterritorially to the same extent as the offenses on which a claim is based.

Dated: July 31, 2025

Respectfully Submitted,

HADSELL STORMER RENICK & DAI LLP

By: _____
William S. Dodge
*Amicus Curiae*

BRIEF OF *AMICUS CURIAE* OF WILLIAM S. DODGE

-10-