1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

AKHMAD, *et. al*,

                           Plaintiffs,

     v.

BUMBLE BEE FOODS, LLC,

                          Defendant.

Case No. 25-cv-00583-BAS-DEB

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF No. 22)**

     For the reasons discussed herein, pursuant to Rule 12(b)(1), the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' claims for injunctive relief **WITHOUT PREJUDICE**.  However, pursuant to Rule 12(b)(6), the Court **DENIES** Defendant's motion to dismiss Plaintiff's Trafficking Victims Protection Reauthorization Act ("TVPRA") under 18 U.S.C.A. §§ 1589, 1595(a); and Plaintiff's negligence claims under

Cal. Civ. Code § 1714.  The Court **GRANTS** Plaintiff leave to amend her claim for injunctive relief under Cal. Civ. Code § 1714.  Plaintiff may file an amended complaint on or before **December 3, 2025**.

## I.    BACKGROUND

Plaintiffs Akhmad, Muhammad Sahrudin, Muhammad Syafi'I, and Angga ("Plaintiffs") initiated this action against Defendant Bumble Bee Foods, LLC ("Defendant") on March 12, 2025.  (ECF No. 1.)  Plaintiffs alleged that Defendant had sourced its albacore tuna, for resale to grocery stores in the United States, from fishing vessels that Defendant knew relied upon Plaintiffs' forced labor.  (*Id*.)  Plaintiff pled causes of action for: (1) TVPRA, pursuant to 18 U.S.C. §§ 1589, 1595; and (2) Negligence, pursuant to Cal. Civ. Code § 1714.  (*Id* ¶¶ 252–270.)

Defendant Bumble Bee Foods, LLC filed a motion to dismiss on June 2, 2025.  (ECF No. 22.)  In its memorandum in support of its motion to dismiss, Defendant countered that: (1) Plaintiffs lack standing to seek equitable relief (ECF No. 22-1 at 16–18); (2) Plaintiffs fail to state a claim under the TVPRA (ECF No. 22-1 at 19–24); (3) Plaintiffs' TVPRA claim is impermissibly extraterritorial (ECF No. 22-1 at 24–30); and (4) Plaintiffs fail to state a California negligence claim (California Code of Civil Procedure § 1714) or to allege the Court's supplemental jurisdiction over such a claim (ECF No. 22-1 at 31–33).  Plaintiffs filed a response in opposition to Defendant's motion to dismiss.  (ECF No. 23.)  Defendant filed a reply.  (ECF No. 27.)

The Court finds the matter appropriate to rule on the papers and without oral argument.  *See* CivLR 7.1.d.1.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss based on the court's lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."  *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983).  Article III requires that: "(1) at least one named

plaintiff suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation marks and citation omitted). Plaintiff has the burden of establishing that the court has subject matter jurisdiction over an action. *Ass'n of Med. Colls. v. U.S.*, 217 F.3d 770, 778–79 (9th Cir. 2000). "For purposes of ruling on a motion to dismiss for want of standing, both the trial judge and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "At the pleadings stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (citation and internal quotation marks omitted).

Rule 12(b)(6) allows a party to move to dismiss based on the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Although the court accepts plaintiff's allegations as true, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the ... law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III.    DISCUSSION

### A.    Injunctive Relief

The Court agrees with Defendant that Plaintiffs have not sufficiently alleged grounds for injunctive relief.[1] First, the civil remedy provision of the Trafficking Victims Protection Reauthorization Act ("TVPRA") does not provide for injunctive relief, and instead, only provides for "damages and reasonable attorneys fees." 18 U.S.C.A. § 1595(a).

Next, to seek injunctive relief for California negligence claims in federal court, Plaintiffs must demonstrate Article III standing—which requires demonstrating likelihood of future harm or threat of irreparable injury. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (explaining a plaintiff may have standing in state court to seek such relief, but nonetheless may be unable to establish Article III standing to pursue injunctive relief in federal court because he cannot demonstrate real or immediate threat of irreparable injury); *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 980 (9th Cir. 2013) ("Injunctive relief [under Article III] requires a showing of a significant likelihood of future injury").

Here, Plaintiffs make conclusory statements that "Plaintiffs continue to suffer harm as a result of Defendant's actions [violating the Trafficking Victims Protection Reauthorization Act]" and "Plaintiffs continue to suffer harm as a result of Defendant's

---

[1] Defendant incorrectly moves to dismiss Plaintiffs' claims for injunctive relief under Rule 12(b)(6). The Court considers Defendant's dismissal under the proper standard set out in Rule 12(b)(1).

actions [violating California negligence law], which prevent Plaintiffs from earning a safe and adequate living as distant-water fishermen." (ECF No. 1 ¶¶ 262, 270.) As Defendant points out, Plaintiffs have not "specifically allege[d] they would seek similar jobs in the future if Bumble Bee [changed its] policies." (ECF Nos. 23 at 30:26–27, 27 at 14:20–21.) Thus, without more, the statement that Plaintiffs "continue to suffer harm" is precisely the type of bare assertion and conclusory statement that the Supreme Court has held insufficient to survive a motion to dismiss. *See Brecher v. Citigroup Glob. Markets, Inc.*, No. 3:09-CV-1344 AJB MDD, 2011 WL 3475299, at *8 (S.D. Cal. Aug. 8, 2011) (citing *Ashcroft v. Iqbal*, ⸺ U.S. ⸺, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). It is true that in cases wherein Plaintiffs are representing a broader class or intend to re-engage in activities necessitating Defendants' involvement, showing an official policy that led to Plaintiffs' alleged injuries may be sufficient for injunctive relief. *See Los Angeles Press Club v. City of Los Angeles*, No. 2:25-CV-05423-HDV-E, 2025 WL 2640421, at *9 (C.D. Cal. Sept. 10, 2025). That is not the case here.

Because Plaintiffs lack Article III standing for injunctive relief, the Court lacks subject matter jurisdiction under Rule 12(b)(1) and, thus, **GRANTS** dismissal of Plaintiffs' claims for injunctive relief **WITHOUT PREJUDICE**. The Court now turns to Plaintiff's claims for damages.

### B.   Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1589, 1595

In their complaint, Plaintiffs alleged that they were the victims of forced labor in violation of 18 U.S.C. § 1589 ("§ 1589"), and sought damages under 18 U.S.C. § 1595 ("§ 1595"), the civil remedy provision of the TVPRA. The two central issues Parties dispute regarding Plaintiffs' TVPRA claims are: (1) whether Plaintiffs' claims are impermissibly extraterritorial, and (2) whether Plaintiff sufficiently alleged the statutory requirements for their TVPRA claims.

#### 1.   Whether Plaintiff's TVPRA Claims are Impermissibly Extraterritorial

Defendant turns to the statutory canon of the presumption against extraterritoriality to argue that provisions § 1595 and § 1589 of the TVPRA do not permit a private right of action for foreign conduct.  (ECF No. 22-1 at 24:19–30:24.)  Application of the presumption is a two-step process, which may reveal that Congress has rebutted the presumption for an entire statutory provision or that the presumption is displaced in the context of a particular case's facts.  Under the first step, a court considers "whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1201–02 (S.D. Cal. 2019) (citing *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 337 (2016)).  Second, if the statute does not clearly indicate an intent that it applies extraterritorially, the court must consider "whether the case involves a domestic application of the statute. . . by looking to the statute's 'focus.' " *Al Otro Lado*, 394 F. Supp. 3d at 1202.  "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Id*.

### i. Whether the TVPRA Clearly Indicates Extraterritorial Application for Violation of § 1589 and Civil Remedy Under § 1595

Defendant contends that, though the TVPRA contains provisions that have express language applying the statute extra-territorially to criminal actions, the civil remedy in § 1595 does not.  (ECF No. 22-1 at 24:27–25:10.)  Defendant bases its position in part, on *RJR Nabisco*, which states: "The presumption against extraterritoriality must be applied separately to both Racketeer Influenced and Corrupt Organizations Act's [("RICO")] substantive prohibitions and its private right of action. . . It is not enough to say that a private right of action must reach abroad because the underlying law governs conduct in foreign countries. Something more is needed." *RJR Nabisco,* 579 U.S. at 350 (holding

although certain substantive criminal prohibitions in RICO applied extraterritorially, the civil cause of action did not).  Based on various theories of statutory interpretation and caselaw, Defendant alleges that the language explicitly permitting extraterritorial application for causes of action in 18 U.S.C. § 1596 ("§ 1596") does not also apply to causes of action under § 1595.  (ECF No. 22-1 at 24:27–29:12.)

By contrast, Plaintiffs argue in their response that § 1595 applies extraterritorially "for the same reason the Supreme Court found that RICO…had extraterritorial application. . . [the statutory provision] incorporates 'a number of predicates that plainly apply to at least some foreign conduct.' "  (ECF No. 23 at 26:21–27:10 (citing *RJR Nabisco*, 579 U.S. at 338–41).)  One such "predicate" cited by Plaintiff is § 1596.  (ECF No. 23 at 27:11–28 (citing *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 204 (5th Cir. 2017)).

Aligned with Plaintiff's position, the Ninth Circuit held: "§ 1595 permits a private cause of action for extraterritorial violations of the substantive provisions listed in § 1596 so long as § 1596's other requirements are satisfied." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1168 (9th Cir. 2022).  The *Ratha* court specified: "§ 1596 supplies extraterritorial application to §§ 1581, 1583, 1584, 1589, 1590, and 1591, but only if the alleged offender is a United States citizen, a lawful permanent resident, or is present in the United States." *Id.*  The Court therefore finds that, if Plaintiff can fulfill the criteria set out in *Ratha*, Plaintiff has sufficiently alleged that §§ 1595, 1596, and 1589 provide the "something more" necessary for rebutting the presumption of extraterritoriality. *RJR Nabisco,* 579 U.S. at 350.  Though courts in other circuits have questioned whether § 1595 can apply extraterritorially, courts within the Ninth Circuit have consistently held they can if they fulfill the criteria in *Ratha* and § 1596. *See e.g., Doe v. WebGroup Czech Republic, a.s.,* No. 2:21-CV-02428 SPG(SKX), 2024 WL 3533426, at *10 (C.D. Cal. July 24, 2024)

Here, Plaintiffs bring their TVPRA forced labor claims under § 1589, one of the provisions for which § 1596 provides a private cause of action.  (ECF No. 1 ¶ 254.) Defendant is incorporated in Delaware and its principal place of business is San Diego, California—meaning Defendant is at the very least, clearly "present in the United States."

(*Id.* ¶ 12.) *Cf Ratha*, 35 F.4th at 1169 (9th Cir. 2022) (Finding defendants were not "present in" the United States for purposes of § 1596 because defendants were both Thai companies who did not "have any address, employees, or physical presence in the United States during the period at issue in this case").

Accordingly, Plaintiffs have met the criteria set out in *Ratha* to prove that § 1596 supplies clear intent of extraterritorial application for cases arising under § 1589. *See Ratha*, 35 F.4th at 1168; *cf Doe v. WebGroup Czech Republic, a.s*., No. 2:21-CV-02428 SPG(SKX), 2024 WL 3533426, at *10 (C.D. Cal. July 24, 2024) ("if a plaintiff can show that [requirements under § 1596] is satisfied, then there may be reason to extend the reach of Section 1595 extra-territorially.")

Citing a non-binding case from the District of Columbia, Defendant alleges that Plaintiffs' TVPRA claims are barred by the presumption of extraterritorial application because "standing alone, [§ 1595] does nothing to rebut the presumption that it applies only domestically." (ECF No. 22-1 at 25:16–19) (citing *Doe I v. Apple Inc*., No. 1:19-cv-03737, 2021 WL 5774224, at *14 (D.D.C. Nov. 2, 2021), *aff'd*, 96 F.4th 403 (D.C. Cir. 2024) (affirming without reaching extraterritoriality)).) It is true that "in isolation, § 1595 is silent as to its extraterritorial application." *Ratha*, 35 F.4th at 1167. However, Plaintiff's claims for damages under § 1595 are not brought "in isolation," but instead, are paired with allegations of violations under § 1589 and fulfill § 1596 requirements. *Id*. Thus, the Court finds Plaintiff's TVPRA claims against Defendant overcome the presumption against extraterritoriality.

### ii. Whether the Case Involves Permissible Domestic Application of the TVPRA

Defendant also alleges that Plaintiffs' § 1589 claims do not have permissible domestic application because "§ 1589's focus is where the forced labor occurred" and the alleged forced labor, and other alleged conduct violating § 1589, happened outside of the United States. (ECF No. 27 at 13:14.) However, since the TVPRA clearly intends to allow extraterritorial application of Plaintiffs' § 1589 and § 1595 claims under the first *NJR*

*Nabisco* step, the Court does not need to reach the second *NJR Nabisco* step considering "whether the case involves a domestic application of the statute ... by looking to the statute's 'focus.'"  *Al Otro Lado,* 394 F. Supp. 3d at 1202 (citing *RJR Nabisco v. Eur. Cmty.*, 579 U.S. at 337.)

\* \* \*

Finding the TVPRA explicitly intended to apply §§ 1589 and 1595 to extraterritorial conduct, the Court thus **DENIES** Defendant's motion to dismiss Plaintiff's claims based on the presumption of extraterritoriality.

### 2.     Whether Plaintiff Plausibly Alleges TVPRA Statutory Requirements

Section 1595(a) of the TVPRA authorizes any "individual who is a victim of a violation of" the Act to "bring a civil action seeking damages and reasonable attorneys fees from the perpetrator, as well as from others who benefitted in specified ways from the violation." *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1149 (9th Cir. 2022) (internal quotations omitted).  The TVPRA creates liability for:

> Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. §§ 1589(a)(1)-(4).

18 U.S.C. § 1589(b) provides for beneficiary liability under TVPRA for:

> Whoever knowingly benefits, financially or by receiving anything of value, from **participation in a venture** which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), **knowing or in reckless disregard** of the fact that the venture has engaged in

the providing or obtaining of labor or services by any of such means, shall be punished as provided in 18 U.S.C. § 1589(b).

To be liable for a violation under § 1589(b), an entity must benefit from the behavior prohibited under § 1589(a) and have knowledge or be in reckless disregard of it. *Zhang v. Chevron Corp.*, No. 24-CV-08641-JSC, 2025 WL 1725006, at *2 (N.D. Cal. June 20, 2025). To bring a cause of action for civil damages under § 1595(a) against a viable beneficiary per § 1589(b), courts have generally accepted that plaintiffs must prove three factors: (1) whether the alleged perpetrators have engaged in forced labor violative of § 1589(a), (2) whether defendants "knowingly benefitted, financially or by receiving anything of value; (3) whether defendants "participate[d] in the venture" wherein forced labor took place, and (4) whether defendants "kn[e]w or should have known" about perpetrators' practice of forced labor. *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1177 (9th Cir. 2022); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214 at *4–6 (N.D. Cal. July 30, 2020).

### i. Whether Plaintiff Pleads Forced Labor Actionable Under TVPRA

Here, neither party contests that Plaintiffs have alleged they were subject to forced labor prohibited by § 1589(a) by the vessel owners. (ECF No. 23 at 28.) "[V]essel owners and their agents who obtained Plaintiffs' labor, physically abused and threatened Plaintiffs, deprived them of adequate sleep and food, and refused to let them go home." (ECF No. 23 at 23:1-4 (citing ECF No. 1 ¶¶ 99–106, 113–18, 125–29, 134–143 and *United States v. Barai*, 55 F.4th 1245, 1247 (9th Cir. 2022) (upholding forced-labor conviction where victims were subject to "eighteen-hour workdays, limited food, isolation from their families, verbal and physical abuse, threats of violence, threats to call the authorities, and no pay.")). The Court finds that Plaintiffs have sufficiently pled that vessel owners and operators engaged in forced labor as defined by § 1589, including: (a)(1) "means of force," (a)(2) "means of serious harm," and (a)(4) "means of any scheme. . . intended to cause the

- 10 -

person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

### ii.    Whether Defendant Knowingly Benefitted

The "knowingly benefit" element of section 1595 "merely requires that Defendant knowingly receive a financial benefit." *B.M. v. Wyndham Hotels & Resorts, Inc*., No. 20-CV-00656-BLF, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020) (citing *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019). Here, Plaintiffs allege Defendant received direct financial benefit in U.S. markets from re-selling tuna procured from the vessels on which Plaintiffs were forced to work. (ECF No. 1 ¶¶ 218, 224, 234, 237, 253, 259.) Given Defendant's active role in obtaining albacore tuna from the vessels on which Plaintiffs were subject to forced labor and reselling the tuna for a profit, Defendant clearly has knowledge of the financial benefit it received. (*Id*. ¶¶ 253, 261.) Plaintiff's allegations are, thus, sufficient to meet the "knowingly benefitted" element of a civil claim under § 1595 of the TVPRA at the motion to dismiss stage.

### iii.    Whether Defendant Participated in a Venture

§ 1589(b) requires Plaintiffs to demonstrate that Defendant had "participat[ed] in a venture" to establish beneficiary liability. Importantly, Courts have held that "participation in the venture" under § 1595 does not require an "overt act" of participation in the criminal act (here, forced labor) itself to redeem TVPRA's civil remedy. *See e.g., Wyndham Hotels & Resorts, Inc*., 2020 WL 4368214, at *3 ("[A]pplying the 'participation in a venture' definition from the criminal liability section of the TVPRA to the civil liability section of the TVPRA, would void the 'should have known' language in the civil remedy and ... violate[ ] the cardinal principle of statutory construction that a statute ought, upon the whole, to be construed so that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant").

The issue is, thus, whether Defendant participated in a venture with Rongcheng City and Rongcheng Ocean (collectively, "Rongcheng")—the owners and operators of the fishing vessels on which Plaintiffs worked (ECF No. 1 ¶ 253). Plaintiffs allege that

Defendant participated in an illegal venture, *inter alia*, because: (1) Defendant profited from selling tuna obtained from the fishing vessels (ECF No. 1 ¶¶ 253, 259); and (2) Defendant collaborated with vessel operators to obtain environmental certifications from the Marine Stewardship Council ("MSC") via implementing fishery improvement projects ("FIPs") (ECF No. 1 ¶ 217). The Court considers each of these allegations in turn.

### a. Whether Profiting from Tuna is Alone Sufficient to Allege Participation

Courts within the Ninth Circuit have held that establishing an ongoing "business relationship" between the alleged beneficiary and criminal perpetrator may be sufficient for establishing participation in a joint venture actionable under the civil remedy provisions of TVPRA. *See e.g.*, *Olive v. Mahboubi-Fardi*, No. 2:23-CV-04370-JAK (EX), 2025 WL 2946987, at *11 (C.D. Cal. Sept. 11, 2025); *Doe (K.R.D.) v. Hilton Worldwide Holdings Inc.*, No. 5:24-CV-06993-PCP, 2025 WL 2539010, at *8 (N.D. Cal. Sept. 4, 2025); *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 783 (C.D. Cal. 2024). However, mere "arms-length transaction[s]" characteristic of an "ordinary buyer-seller" transaction is not sufficient to establish an "ongoing business relationship" characteristic of participating in an unlawful venture. For instance, in *Doe 1 v. Apple Inc*., the District of Columbia Circuit court held that a relationship between sellers and buyers of cobalt was insufficient to establish a "shared enterprise" to profit from forced labor. *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) (cited by *Doe (K.R.D.) v. Hilton Worldwide Holdings Inc.*, No. 5:24-CV-06993-PCP, 2025 WL 2539010, at *8, n. 5 (N.D. Cal. Sept. 4, 2025)).

Applying that logic here, the mere fact that the fishing vessel operators, Rongcheng City and Rongcheng Ocean, sell tuna that Defendant buys tuna from Rongcheng City and Rongcheng Ocean (among other suppliers) does not establish that Defendant and fishing vessel operators have entered into a joint venture in violation of 18 U.S.C. §§ 1589, 1595. "Although a formal business relationship is not necessary to be a participant in a venture, something more than engaging in an ordinary buyer-seller transaction is required"—like a

"common purpose, shared profits and risk, or control" by the defendant of the relevant entity. *Apple Inc.*, 96 F.4th at 415–16.

Having found that an "arms-length transaction" between a typical buyer and seller would not suffice for "participation" under §§ 1589, 1595, the Court now evaluates whether Plaintiffs have sufficiently alleged the Defendant has participated in growing fishing vessel operators' business beyond merely buying their tuna for resale.

### b. Whether FIPs are Sufficient to Allege Participation

Plaintiffs allege that Defendant and its parent company FCF sponsored Fisheries Improvement Projects ("FIPs"), which enable fishing vessels to obtain environmental certifications from the Marine Stewardship Council ("MSC"). (ECF No. 1 ¶¶ 217–218.) Rongcheng City and Rongcheng Ocean, and the particular fishing vessels Plaintiffs worked on, were all participants in the FIPs. (*Id.* ¶¶ 219–238.) Beyond financially sponsoring the FIPs, Defendant also conducted audits (involving office documentation reviews and on-site vessel monitoring) and electronically monitored Rongcheng's vessels and harvests to ensure the participating fisheries implemented sufficient environmental sustainability measures to obtain MSC certification. (*Id.* ¶¶ 197, 227–228, 232.)

As part of participation in Defendant-sponsored FIPs, the vessels Plaintiffs worked on harvested albacore tuna exclusively for sale to Defendant. (*Id.* ¶¶ 234, 237.) MSC certification "preserve[s] market access to the increasing proportion of retail buyers who prioritize certifications" and "increases the price consumers are willing to pay for a can of albacore tuna." (*Id.* ¶ 218.) The FIPs, thus, both promoted the sustainability of each fishery, and the subsequent profitability of Defendant's sales to customers in the U.S. overall. (*Id.* ¶¶ 226–227.) As Plaintiffs put it: "the success and failure of all members of the venture are closely intertwined and rise and fall together." (*Id.* ¶ 172.)

"Participation in the civil context requires only a showing of a 'desire to promote the wrongful venture's success.'" *Fleites v. MindGeek S.A.R.L.*, No. 2:21-CV-04920-WLH-ADS, 2025 WL 2902301, at *12 (C.D. Cal. Sept. 26, 2025) (citing *G.G. v. Salesforce.com, Inc.,* 76 F.4th 544, 559 (7th Cir. 2023)).

A "desire to promote the wrongful venture's success" cannot be shown though one-time provisions of "off-the-shelf materials and machinery," but can be shown through "tailored," "active, [and] ongoing support." *See Mia v. Kimberly-Clark Corp.*, No. 1:22-CV-02353 (CJN), 2025 WL 752564, at *4 (D.D.C. Mar. 10, 2025) (holding that defendant company providing machinery and molds to latex glove manufacturer, from which defendant purchased an unspecified amount of gloves, did not constitute participation in a wrongful venture) (contrasting its facts with *Salesforce*, 76 F.4th at 560–61). In other words, to prove participation in the civil context, Plaintiffs need to demonstrate that Defendant and fishing vessel operators had a "business relationship [that] was more than just a purchasing agreement." *Apple*, 96 F.4th at 415.

Courts have consistently held that active, ongoing support tailored to the business needs of criminal perpetrators for the purpose of shared risk and profit goes beyond mere "ordinary buyer-seller" transactions. *See e.g., Acevedo*, 713 F. Supp. 3d at 784 (finding a venture where defendants participated in a multi-level marketing enterprise, in which the members of the enterprise were partners in a revenue sharing scheme that required members to continually recruit new agents to financially benefit everyone "upline" from them); *J.G. v. Northbrook Industries, Inc.,* 619 F. Supp. 3d 1228, 1236 (N.D. Ga. 2022) (finding a venture where trafficker regularly paid hotel employees to be on "lookout" outside of hotel rooms in support of illicit sex trafficking activities); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 549–50, 554 (7th Cir 2023) (finding a venture where a software provider that had entered contracts with an online marketplace used for trafficking and provided the marketplace "active, ongoing support" tailored to its business needs).

Here, Defendant did not merely "provide materials" to fishing vessel operators. An MSC certification, which involves significant ongoing financial investment and business advice from Defendant, can hardly be akin to "off-the-shelf materials and machinery." It constitutes "tailored," "active, [and] ongoing support." *Cf Apple*, 96 F.4th at 415; *Salesforce*, 76 F.4th at 560–61. Further, Defendant clearly had a vested interest in "promot[ing] the wrongful venture's success," given that Defendant contracted with the

- 14 -

fisheries for them to exclusively sell albacore tuna to Defendant. *Salesforce.com*, 76 F.4th at 559.

The present case can thus, be readily distinguished from that in *Kimberly-Clark Corp.*, or *Apple,* in which defendant companies only purchased an *unspecified* amount of goods from criminal perpetrators, and so, did not exercise enough financial leverage over perpetrators to arise to "participation" in a venture under § 1595. *Kimberly-Clark Corp.*, 2025 WL 752564, at *4; *Apple*, 96 F.4th at 415. Thus, even if Defendant contests that it lacked a "direct association with [perpetrators]" (*i.e.*, Defendant did not itself inflict forced labor, and its parent company FCF acted as middlemen in certain interactions with Rongcheng), the Court finds that FCF and Rongcheng have a "continuous business relationship . . . such that it would appear that [they] have established a pattern of conduct or could be said to have a tacit agreement." *See Fleites*, 2025 WL 2902301, at *12.

### iv. Whether Defendant Should Have Known about Forced Labor

Like in the present case, in the *Ratha* complaint, plaintiffs alleged violation of § 1589 and sought damages under the civil remedy provision § 1595. § 1595(a) states:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Because § 1595 is a civil remedy, courts—including the Ninth Circuit—have adopted a civil negligence standard to plead a cause of action. To prove a mental state actionable under § 1595, Plaintiffs are required to prove that Defendant "knew or should have known" about the forced labor practices violating the TVPRA at the vessels on which Plaintiffs worked. *Ratha*, 35 F.4th at 1177. As *Ratha* explains: "[T]he phrase 'knew or should have known' usually connotes negligence. . . [a]nd '[n]egligence is a less culpable mental state than actual knowledge.'" *Ratha*, 35 F.4th at 1177 (citing

*Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1358 (9th Cir. 1980) and *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019)).

"Should have known" could entail that Defendant had notice that forced labor was likely occurring on the particular vessels on which Plaintiffs alleged experiencing abuse—but not that the albacore tuna industry presents risk of forced labor as a whole. *Cf Ratha*, 35 F.4th at 1177 (9th Cir. 2022) (generalities about the Thai shrimp industry are "too attenuated to support an inference that Wales knew or should have known of the specifically alleged TVPRA violations at the Songkhla factory between 2010 and 2012"); *Salesforce.com*, 76 F.4th at 555 (holding that defendant "knew or should have known," pursuant to § 1595, about perpetrator's violative conduct through public news reports and state attorney general notices identifying perpetrator in particular); *Wyndham Hotels & Resorts, Inc*., 2020 WL 4368214, at *5 ("While Defendants need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, Plaintiff must allege facts to support that Wyndham and Choice, at the very least, rented rooms to people they should have known were engaging in her sex trafficking").

The Ninth Circuit has held that public reports on "industry-wide" abuse in a particular country and on buyers of perpetrating companies' products cannot "support a reasonable inference of [Defendant's] knowledge of alleged labor abuses." *See Ratha*, 35 F.4th at 1178. However, the Ninth Circuit's interpretation here does not preclude the Seventh Circuit's reading of § 1595's knowledge requirement—in which public reports identifying serious workplace abuse by perpetrators at issue in the action during the relevant time-period can provide adequate notice to defendants doing business with perpetrators. *See id*; *Salesforce.com,* 76 F.4th at 555 (holding that defendant "knew or should have known," pursuant to § 1595, about perpetrator's violative conduct through news reports and state attorney general notices identifying perpetrator in particular).

Here, Plaintiffs had suffered physical abuse and forced labor on Rongcheng vessels from roughly 2020 to 2023. (*See* ECF No. 1 ¶¶ 96–106 (Plaintiff Akhmad worked on a

vessel from 2020 to 2023), ¶¶ 107–119 (Plaintiff Angga worked on a vessel for at least several months in 2021), ¶¶ 132–144 (Plaintiff Sya'fi worked on a vessel from roughly 2021 to at least 2022).)  Plaintiffs cite public sources identifying forced labor conditions on vessels supplying Defendant with albacore tuna that were published during the time of Defendant's alleged violations of the TVPRA from 2020 to 2023, including *inter alia*:

1. In March 2020, Greenpeace East Asia released a report on forced labor on Taiwanese fishing vessels which included a fisher working on vessel supplying FCF, Defendant's parent company and primary supplier (*id.* ¶ 82);

2. In August 2020, U.S. Customs Border Protection issued a withhold release order against tuna harvested by *Da Wang*, a Taiwanese distant-water fishing vessel that supplied Defendant (*id.* ¶ 85);

3. In May 2021, Greenpeace Southeast Asia and SBMI released a report summarizing complaints against Indonesian migrant workers on ten tuna longliners for abuses indicative of forced labor – two of which (*Da Wang* and *Lu Rong Yuan Yi 139*) have supplied Defendant with albacore tuna (*id.* ¶ 90);

4. In February 2022, Global Labor Justice – International Labor Rights Forum filed a lawsuit against Defendant in the District of Columbia Superior Court for claiming its tuna was produced with "fair and responsible working conditions" "when, in fact, Bumble Bee sells tuna products caught by laborers who are subjected to inhuman conditions" (*id.* ¶ 91);

5. In September 2022, Greenpeace East Asia published a report entitled "Fake My Catch," which specifically linked Defendant to tuna produced with forced labor— including tuna that was sourced from *Da Wang*, the ship that U.S. Customs Border Protection issued a withhold release order for in August 2020 (*id.* ¶ 93); and

6. In July 2023, Greenpeace USA directly contacted representatives from Defendant via email and invited them to discuss potential improvements to Defendant's human rights policies.  Defendant declined the invitation (*id.* ¶ 95).

Notably, these sources do not indicate whether forced labor was happening on the specific vessels on which Plaintiffs experienced forced labor. Like the reports in *Ratha,* these sources also do not identify Rongcheng as a specific vessel operator that employs force labor, and do not identify the specific vessels on which Plaintiffs allegedly experienced abuse. Yet, these sources can hardly be said to be an "industry-wide" reports that *Ratha* had criticized as too general to establish knowledge. In contrast to the reports in this action, those reports refused to identify specific perpetrators and their relationship to Defendant. *See Ratha*, 35 F.4th at 1178. Indeed, the instances listed above identify public reports and legal actions against Defendant and Defendant's parent company during the same time Plaintiffs allege experiencing forced labor. Further, Plaintiffs distinguish Defendant from others in the fishing industry who they identify *have* complied with human rights measures. (*See* ECF No. 1 ¶¶ 239, 240 (comparing Bumble Bee and FCF to other major international sea food corporations that rank higher on criteria for human rights on civil society reports).)

Nonetheless, courts within the Ninth Circuit have also held that "should have known" in § 1595 could also entail Defendant being "on notice about the prevalence of [forced labor] generally at [the vessels it sources from] and failed to take adequate steps to train staff in order to prevent its occurrence." *Cf Acevedo*, 713 F. Supp. 3d at 780 (interpreting *Wyndham Hotels & Resorts*, 425 F. Supp. 3d 959); *Fleites*, 2025 WL 2902301, at *10 (finding Defendant "knew or should have known perpetrator was engaged in sex trafficking" because, in part, Defendant knew about troves of illicit content on its platforms but still embraced a business model that allowed such content to proliferate and maximize profit).

In addition to the public reports Plaintiffs identified above, Plaintiffs alleged that Defendant has been an "active participant" in its parent company FCF's "Social Responsibility Program"—which "set[s] crew recruitment, wage and benefits, and health and safety policies and procedures." (ECF No. 1 ¶ 192.) As part of the program, Defendant claims to have worked directly with "fleets and vessels that supply

- 18 -

[Defendant] to review their operations and assist with capacity building, including on issues of crew health, safety, and livelihood." (*Id.* ¶ 191.)

Again, to avoid a Rule 12(b)(6) dismissal, Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Reading Parties' papers in favor of the nonmoving party (Plaintiff) as required by Rule 12(b)(6), the Court finds that Defendant likely had "notice about the prevalence" of forced labor on the vessels from which it sourced tuna "and failed to take adequate steps to train staff in order to prevent its occurrence" on the vessels that Plaintiffs experienced abuse. *Acevedo*, 713 F. Supp. 3d at 780; *Cahill*, 80 F.3d at 337–38.

\* \* \*

For the foregoing reasons, the Court finds Plaintiffs sufficiently pled their TVPRA claims. Thus, the Court **DENIES** Defendant's motion to dismiss Plaintiff's TVPRA claims.

## B.    Negligence, Cal. Civ. Code § 1714

### 1.    Whether the Court Can Exercise Supplemental Jurisdiction

Once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under § 1367(c) is discretionary. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

§ 1367(a), which confers supplemental jurisdiction, provides:

> [T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Because the Court has not "dismissed all claims over which it has original jurisdiction" (*see* § 1367(c)(3)) and has not found any of the other factors in § 1367(c) to be met, the Court finds it can exercise supplemental jurisdiction here—even if Plaintiffs have not explicitly raised a claim for it.

### 2.    Whether Defendant Had a Duty to Exercise Ordinary Care

25cv583

Defendant alleges that Plaintiffs need to establish a "special relationship" to establish duty under Cal. Civ. Code § 1714.  Under California law, the elements of a negligence tort cause of action are duty, breach, causation and damages.  *Brown v. USA Taekwondo*, 253 Cal. Rptr. 3d 708, 722 (2019).  In general, each person has a duty to act with reasonable care under the circumstances.  *Regents of Univ. of California v. Superior Ct.*, 230 Cal.Rptr.3d 415, 432 (2018) (citing Cal. Civ. Code § 1714(a), establishing a "general duty of each person to exercise, in his or activities, reasonable care for the safety of others.")  "However, 'one owes no duty to control the conduct of another, nor to warn those endangered by such conduct.' "  *Regents*, 230 Cal.Rptr.3d at 424.

A plaintiff alleging that the defendant had a duty to protect her against a third party must establish: (1) that an exception to the general no-duty-to-protect rule applies, for instance, that a special relationship exists, and (2) that the factors enumerated in *Rowland v. Christian*, 69 Cal.Rptr.2d 108 (1968), support the imposition of the duty.  *Brown v. USA Taekwondo*, 253 Cal.Rptr.3d at 723; *Doe by Doe v. Piraino*, 688 F. Supp. 3d 635, 659 (M.D. Tenn. 2023).  The Court also considers Plaintiffs' alternative theory Defendant's conduct amounted to misfeasance.  (ECF No. 23 at 32:6–34:14.)

### i.    Special Relationship

Defendant asserts that Plaintiffs failed to allege that Defendant has a special relationship with "[Rongcheng] [such that it] places [Defendant] in the best position to protect against the risk of harm."  (ECF No. 21:13–15 (citing *Brown*, 253 Cal.Rptr.3d at 723).)  To plead a special relationship, Plaintiffs must demonstrate "[Defendant's] ability to control the person who caused the harm must be such that 'if exercised, [it] would meaningfully reduce the risk of the harm that actually occurred.' "  *Brown*, 253 Cal.Rptr.3d at 723 (holding, *inter alia,* plaintiffs alleged that the United States Association of Taekwondo ("USAT") had a special relationship with sexually abusive coach because the USAT had instituted codes of conduct compliant with United States Olympic Committee requirements and the USAT had the power to suspend and expel coaches for ethics violations); *see also Doe 1 v. City of Murrieta*, 126 Cal.Rptr.2d 213 (2002) (police

department that sponsored "explorer program" was in special relationship with the teenage explorers and owed them "a duty of care to protect them from foreseeable harm," including from sexual relationship with police officer who served as adviser during ride-alongs at night); *see also Barenborg v. Sigma Alpha Epsilon Fraternity*, 244 Cal.Rptr.3d 680 (2019) (national fraternity did not have special relationship with its local chapter and therefore had no duty to protect student who was injured at party held by local chapter, despite national fraternity's adoption of policies governing local chapter and ability to discipline chapter for policy violations because it had no ability to prevent injury on a day-to-day basis).

Defendant contests that it does not exercise sufficient control over Rongcheng for there to be a special relationship because Defendant does not control the staffing agencies and vessel captains responsible for the vessels on which Plaintiffs suffered forced labor. (ECF No. 22-1 at 33.) Defendant alleges its role is more akin to the United States Olympic Committee that the California Court of Appeals declined to find negligent—since the Committee had only set policies to regulate the USAT, rather than the sexually abusive coach directly. *Brown*, 253 Cal.Rptr.3d at 732. Crucially, in *Brown*, the Court distinguished the Committee from governing bodies that could set requirements for hiring and exercise authority to deny certification to coaches. *Id*.

The Court finds that Plaintiffs have sufficiently pled facts to establish a special relationship between Defendant and Rongcheng. Unlike the Committee in *Brown*, Defendant allegedly "set[] policies and procedures for the vessels in its fleet through the FCF "Social Responsibility Program," and it "set and enforced policies and procedures that each vessel in its FIPs were required to follow." (ECF No. 23 at 33–34.) Like the governing bodies the *Brown* court specified *would* qualify as having a special relationship with the tortfeasor, Defendant allegedly sets out "crew recruitment, wage and benefits, and health and safety policies and procedures" via its "social responsibility program." (ECF No. 1 ¶ 192.) Defendant also allegedly has "worked directly with the fleets and vessels that supply [Defendant] to review their operations and assist with capacity building." (*Id*. ¶ 193.) Defendant further financed and implemented policies for Rongcheng vessels to

- 21 -

obtain MSC certification via its FIPs. (*Id.* ¶ 227.) Additionally, at this stage in pleadings, the Court takes Plaintiffs at their word that Defendant can refuse to do business with Rongcheng vessels and take other disciplinary actions against Rongcheng vessels. *Cf Brown*, 253 Cal.Rptr.3d at 723 (USAT had a special relationship with abusive coaches because it had the power to suspend and expel coaches for ethics violations). Thus, Plaintiffs have sufficiently pled a "special relationship" between Defendant and the Rongcheng vessels on which Plaintiffs experienced abuse to survive the motion to dismiss stage.

### ii.  *Rowland* Factors

The "*Rowland*" factors—which California courts employ to evaluate whether there should be a categorical exception to the general duty of care—can be generally broken down into "foreseeability" factors and "public policy" considerations. *Hughes*, 723 F.Supp.3d at 701; *Fleites*, 2025 WL 2902301, at *20 (C.D. Cal. Sept. 26, 2025). When considering these factors, courts evaluate "not whether they support an exception to the general duty of reasonable care on the facts of the particular case ..., but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy." *Brown*, 253 Cal. Rptr. 3d at 726 (quoting *Regents v. Superior Ct.*, 413 P.3d 656, 670 (2018)).

The foreseeability factors are "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, [and] the closeness of the connection between the defendant's conduct and the injury suffered." *Social Media Cases*, 2023 WL 6847378, at *24. The policy factors are "the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Id.* Courts should create such an exception only when it is "clearly supported by public policy" and when it is possible to "promulgate relatively clear, categorical, bright-line rules of law applicable to general classes of cases." *Id.* at 1143–44.

Regarding the *Rowland* foreseeability factors, the Court has already found that Defendant "should have known" about the risks of forced labor in the vessels on which Plaintiffs were employed, and that Defendant monetarily benefitted from that forced labor. *Supra* § III.B.2.iv.  Thus, the Court finds that the foreseeability factors weigh in favor of Plaintiff.

The Court also finds that the *Rowland* policy factors weigh in favor of imposing duty onto Defendant.  "[M]oral blame" attaches to Defendant's conduct because Defendant "could have taken reasonable ameliorative steps earlier but failed to do so." *Brown*, 253 Cal.Rptr.3d at 729.  More specifically, Plaintiffs allege Defendant could have adopted human rights policies (such as "a policy banning recruitment fees and deposits, in line of ILO Convention 188, to phase out the use of transshipments"), and Defendant could have refused to do business with Rongcheng vessels upon finding abuse.  (*See* ECF No. 1 ¶¶ 23, 241.)  Further, the societal goal of safeguarding fisherman from forced labor weighs in favor of imposing a duty on Defendant to "take measures to prevent future harm, and that imposing this duty on it would not be unduly burdensome or costly in light of the benefits to society." *Doe*, 688 F. Supp. 3d at 661 (M.D. Tenn. 2023).  Lastly, the fact that Defendant can sponsor FIPs and can participate in the social responsibility program suggests that it would not be "unduly burdensome or costly" to require Defendant to reach the human rights standards it has purportedly set out for itself.  In fact, doing so "may foster a greater sense of community confidence in and respect for [Defendant]." *City of Murrieta*, 126 Cal.Rptr.2d at 227.

### iii.   Misfeasance

Alternatively, Plaintiffs allege Defendant's negligence under a theory of misfeasance.  (ECF No. 23 at 32:6–34:14.)  Under misfeasance, when a defendant has "create[d] or contribute[d] to the [plaintiff's] risk of [harm]," the defendant owes the plaintiff a duty of care under Cal. Civ. Code § 1714. *Kuciemba v. Victory Woodworks, Inc.*, 310 Cal.Rptr.3d 97, 116 (2023).  That legal duty arises when Defendant, "through [its] own action (misfeasance)[,] has made the plaintiff's position worse and has created a

foreseeable risk of harm from the third person." *Doe v. Uber Techs., Inc.*, No. 19-CV-03310-JSC, 2020 WL 2097599, at *3 (N.D. Cal. May 1, 2020) (citing *Melton v. Boustred*, 183 Cal. App. 4th 521, 531 (2010)). This includes instances of "liability premised on the conduct of a third party," at least where the "defendant had a duty to prevent injuries due to its own conduct or possessory control." *Id.* To plead misfeasance, the "proper question ... is whether the defendant's 'entire conduct created a risk of harm' to the plaintiff." *Doe v. Uber Techs., Inc.*, 90 F.4th 946, 951 (9th Cir. 2024) (citing *Kuciemba v. Victory Woodworks, Inc.*, 310 Cal.Rptr.3d 97 (2023)).

Here, Defendants' conduct discussed in prior sections "created the opportunity and [financial] incentive for the vessel owners to abuse Plaintiffs." (ECF No. 23 at 33:14–15.) Further, as discussed in the prior section on whether Defendant had a special relationship with Rongcheng (*supra* § III.B.2.i), Defendant "controlled the vessels on which Plaintiffs were abused." (*Id.* at 33:22–24.) Thus, the Court finds that Plaintiffs have adequately alleged that misfeasance triggering Defendant's duty to protect Plaintiffs from forced labor on Rongcheng vessels.

\* \* \*

For the reasons above, the Court concludes Defendant's special relationship with Rongcheng vessels, the *Rowland* factors, and Defendant's misfeasance establish that Defendant had a duty to protect Plaintiffs from becoming victims of forced labor on Rongcheng's vessels through reasonable protective measures. The Court, therefore, **DENIES** Defendant's motion to dismiss Plaintiff's negligence claims.

## IV.    LEAVE TO AMEND

The Court **GRANTS** Plaintiff leave to amend her claims for injunctive relief under Cal. Civ. Code § 1714.

## V.    CONCLUSION

For the foregoing reasons, pursuant to Rule 12(b)(1), the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' claims for injunctive relief **WITHOUT PREDJUDICE**. However, pursuant to Rule 12(b)(6), the Court **DENIES** Defendant's

motion to dismiss Plaintiff's TVPRA claims under 18 U.S.C.A. §§ 1589, 1595(a); and Plaintiff's negligence claims under Cal. Civ. Code § 1714. The Court **GRANTS** Plaintiff leave to amend her claims for injunctive relief under Cal. Civ. Code § 1714. Plaintiff may file an amended complaint on or before **<u>December 3, 2025</u>**.

      **IT IS SO ORDERED.**

**DATED: November 12, 2025**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**