**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

AKHMAD, *et al.*,

                              Plaintiffs,

    v.

BUMBLE BEE FOODS, LLC,

                              Defendant.

Case No. 25-cv-00583-BAS-DEB

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, FOR CERTIFICATION FOR INTERLOCUTORY REVIEW (ECF No. 36)**

Pending before the Court is Defendant Bumble Bee Foods, LLC ("Bumble Bee Foods")'s motion for reconsideration, or in the alternative, for certification for interlocutory review ("Motion"). (ECF No. 36.) The Court **DENIES IN PART** and **GRANTS IN PART** Bumble Bee Foods' Motion. (*Id.*)

More specifically, while the Court **GRANTS** Bumble Bee Foods' Motion to reconsider its prior construction of *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) (hereinafter, "*Ratha* I") as explicitly holding that TVPRA § 1595 claims

- 1 -

25cv583

predicated upon TVPRA § 1589 violations have extraterritorial application, the Court **DENIES** Bumble Bee Foods' Motion to reconsider whether the TVPRA clearly grants extraterritorial application to TVPRA § 1595 claims predicated upon TVPRA § 1589 violations.  (ECF No. 36.)  The Court also **DENIES** Bumble Bee Foods' Motion for interlocutory review.  (*Id.*)

## I.     BACKGROUND

Plaintiffs Akhmad, Muhammad Sahrudin, Muhammad Syafi'I, and Angga ("Plaintiffs") initiated this action against Bumble Bee Foods on March 12, 2025.  (ECF No. 1.)  Plaintiffs alleged that Bumble Bee Foods had sourced its albacore tuna, for resale to grocery stores in the United States, from fishing vessels that Bumble Bee Foods knew relied upon Plaintiffs' forced labor.  (*Id.*)  Plaintiffs pled causes of action for: (1) violation of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1581 *et seq.* ("TVPRA"), pursuant to 18 U.S.C. §§ 1589, 1595; and (2) negligence, pursuant to California Civil Code § 1714.  (*Id.* ¶¶ 252–70.)  On June 2, 2025, Bumble Bee Foods moved to dismiss.  (ECF No. 22.)  Parties briefed Bumble Bee Foods' motion to dismiss.  (ECF Nos. 23, 25.)

On November 12, 2025, the Court granted in part and denied in part Bumble Bee Foods' motion to dismiss.  (ECF No. 29.)  In relevant part, in denying Bumble Bee Foods' motion to dismiss, the Court found that Plaintiffs' TVPRA claims could apply to extraterritorial conduct under 18 U.S.C. §§ 1589, 1595 and that Plaintiffs have plausibly alleged the elements of their TVPRA claims—including that Bumble Bee Foods had the requisite *mens rea*.  (*Id.*)

On December 10, 2025, Bumble Bee Foods moved to reconsider the Court's Order and to certify certain issues for interlocutory appeal.  (ECF No. 36.)  Plaintiffs responded.  (ECF No. 41.)  Bumble Bee Foods replied.  (ECF No. 43.)  Plaintiffs filed an ex parte motion for leave to submit notice of supplemental authority in support of their response to bring the Ninth Circuit decision *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026) (en banc) (hereinafter, "*Ratha* III"), to the Court's attention.  (ECF No. 44.)  The

25cv583

Court granted Plaintiffs' motion (ECF No. 47), and Plaintiffs filed a copy of *Ratha* III (ECF No. 48).

## II.    LEGAL STANDARD

Motions for reconsideration are within the discretion of the trial court. *See Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir. 1983) (en banc). Under Civil Local Rule 7.1.i, a party may apply for reconsideration when a "motion or any application or petition for an order or other relief has been made to a judge and has been refused in whole or in part." CivLR 7.1.i.1. On a motion to reconsider, relief should be granted only "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or [its] initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). In order to succeed on a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Singleton v. Kernan*, No. 16-CV-02462-BAS-NLS, 2017 WL 4922849, at *2 (S.D. Cal. Oct. 31, 2017). A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court has already ruled. *Id.*

Clear error does not exist where the issue is merely "a debatable one." *McDowell v. Calderon*, 197 F.3d 1253, 1256 (9th Cir. 1999). Instead, a finding of clear error is appropriate only where the Court is left with the "definite and firm conviction" that a mistake has been committed. *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW, 2015 WL 1478636, at *2 (N.D. Cal. Mar. 31, 2015). "[T]he courts of the Ninth Circuit generally treat manifest injustice as very nearly synonymous with clear error, defining manifest injustice as any error in the trial court that is direct, obvious and observable, such as a defendant's guilty plea that is involuntary." *Raya v. Calbiotech*, No. 3:18-CV-2643-WQH-AHG, 2019 WL 11504688, at *3 (S.D. Cal. Nov. 26, 2019) (collecting cases). The manifest injustice ground, which "requires that the error be apparent to the point of being indisputable[,] . . . is not meant to allow a disappointed litigant to attempt to persuade the court to change its mind." *Id.*

## III.   ANALYSIS

### A.   Extraterritoriality

Bumble Bee Foods moves for reconsideration of the Court's denial (ECF No. 29) of Bumble Bee Foods' request for the Court to dismiss Plaintiffs' complaint on grounds that Plaintiffs' TVPRA claims are precluded by the presumption against the extraterritorial application of certain statutes.  More specifically, Bumble Bee Foods argues that the Ninth Circuit in *Ratha* I cabined its ruling that "we assume without deciding" that the *Ratha* plaintiff's claim applies to extraterritorial violations.  (ECF No. 36-1 at 6:3–18.)

### 1.   *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022)

Relying on *Ratha* I, 35 F.4th 1159, the Court previously concluded the Ninth Circuit has held private causes of action apply extraterritorially to 18 U.S.C. § 1595(a) ("TVPRA§ 1595(a)") where other requirements in 18 U.S.C. § 1596 ("TVPRA § 1596") are satisfied. (ECF No. 29 at 7:6–24.)  This was a clear error.  The Court misstated that *Ratha* I "held" (rather than "assume[d] without deciding") that private causes of action brought under the TVPRA § 1595 apply extraterritorially.  *Ratha* I, 35 F.4th at 1168.

Thus, the Court **GRANTS** Bumble Bee Foods' motion to reconsider (ECF No. 36) the Court's prior reasoning (ECF No. 29) that the Ninth Circuit has definitively held in *Ratha* I, 35 F.4th at 1168, that a claim under TVPRA § 1595 to privately enforce predicate violations of TVPRA § 1589 can apply extraterritorially.

In addition, since the Court heavily relied upon a misinterpretation of *Ratha* I in its prior opinion to decide upon extraterritoriality, the Court reevaluates below whether its outcome—that Plaintiffs' TVPRA claims can apply extraterritorially—is a clear error.

### 2.   *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 337 (2016) Framework

In *RJR Nabisco v. European Community*, the Supreme Court set forth a "two-step framework for analyzing extraterritoriality issues."  *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 337 (2016).  The first step of the *RJR Nabisco* framework asks "whether the statute gives a clear, affirmative indication that it applies extraterritorially," and thereby rebuts the presumption against extraterritoriality.  *Id.* at 337.  In making that determination, courts

- 4 -

25cv583

look to the text of the statute, but "an express statement of extraterritoriality is not essential." *Id.* at 340. The structure and history of the statute are also relevant to this analysis, and in some circumstances the statute's "context" may be "dispositive." *Id.* at 340.

If the statute is not extraterritorial, the second step of the *RJR Nabisco* framework requires determining "whether the case involves a domestic application of the statute"— meaning whether "the conduct relevant to the statute's focus occurred in the United States." *RJR Nabisco*, 579 U.S. at 326. If the "relevant" conduct happened in the United States, then the case "involve[s] a permissible domestic application." *Id.* at 326. However, if the "relevant" conduct happened in a foreign country, then the action "involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Id.* at 326.

The *RJR Nabisco* Court evaluated whether 18 U.S.C. §§ 1961–1968 ("RICO") (in particular, RICO §§ 1962 and 1964) evinced a "clear, affirmative indication that it applies extraterritorially." *RJR Nabisco*, 579 U.S. at 339. RICO § 1962 prohibits "enterprise[s]" from engaging in several different forms of racketeering activity that involve "interstate or foreign commerce," which are based on predicate offenses throughout RICO and subject to criminal penalties set forth in RICO § 1963. RICO § 1964(c) creates a private civil cause of action that allows "[a]ny person injured in his business or property by reason of a violation of section 1962" to sue in federal district court and recover treble damages, costs, and attorney's fees. *RJR Nabisco*, 579 U.S. at 331 (quoting RICO § 1964(c)).

The *RJR Nabisco* Court reasoned that RICO defined "racketeering activity" to include "a number of predicates that plainly apply to at least some foreign conduct," and thus, "Congress's incorporation of [such] extraterritorial predicates into RICO gives a clear, affirmative indication that [RICO] § 1962 applies to foreign racketeering activity . . . only to the extent that the predicates alleged in a particular case themselves apply extraterritorially." *Id.* at 337–39. For example, "a violation of § 1962 could be premised on a pattern of killings of Americans abroad in violation of § 2332(a)—a predicate that all

- 5 -

agree applies extraterritorially—whether or not any domestic predicates are also alleged." *Id.* at 339. Thus, although there was not an "express statement of extraterritoriality" in RICO § 1962, the *RJR Nabisco* Court still found that RICO "clearly and directly incorporates . . . predicate statutory provision[s] that appl[y] extraterritorially." *See Roe v. Howard*, 917 F.3d 229, 242 (4th Cir. 2019) (citing *RJR Nabisco*, 579 U.S. at 339–40).

By contrast, the *RJR Nabisco* Court found that RICO § 1964(c) lacked an explicit grant of extraterritorial application, and that language providing "any" person injured by a violation of RICO § 1962 had statutory standing was insufficient alone to displace the statutory canon of the presumption against extraterritoriality in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). *See RJR Nabisco*, 579 U.S. at 350 (citing *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 118 (2013) ("Nor does the fact that the text reaches '*any* civil action' suggest application to torts committed abroad; it is well established that generic terms like 'any' or 'every' do not rebut the presumption against extraterritoriality.")).

### 3. Application of *RJR Nabisco* Step One Analysis to Plaintiffs' TVPRA Claims

The TVPRA makes it clear that U.S. courts have extraterritorial jurisdiction over any offense under 18 U.S.C. § 1589. 18 U.S.C. § 1596 ("[T]he courts of the United States have extraterritorial jurisdiction over any offense . . . under section 1581, 1583, 1584, 1589, 1590, or 1591"). Thus, Congress has manifested a clear, affirmative indication that TVPRA § 1589 applies extraterritorially, and the only question is whether this extends to TVPRA § 1595, imposing civil liability for a violation of TVPRA § 1589. This Court agrees with those courts that have found it does. *See, e.g., F.C. v. Jacobs Solutions, Inc.*, 790 F. Supp. 3d 1158, 1183 (D. Colo. 2025) ("[T]he history, structure, context, and purpose of the TVPRA all reveal Congress's intent that [TVPRA §] 1596's extraterritorial scope apply to [TVPRA §] 1595."); *see also United States ex rel. Hawkins v. ManTech Int'l Corp.*, 752 F. Supp. 3d 118, 133 (D.D.C. 2024) (rejecting prior D.C. District Court holding that TVPRA § 1596 does not provide a clear indication that the civil remedy has

extraterritorial effect in *Doe I v. Apple Inc.*, No. 19-cv-3737, 2021 WL 5774224 (D.D.C. Nov. 2, 2021), *aff'd sub nom. Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024) (affirming without reaching the extraterritoriality issue)); *see also A.A. v. Omnicom Grp., Inc.*, No. 25-CV-3389 (JMF), 2026 WL 504904, at *19 (S.D.N.Y. Feb. 24, 2026) (reasoning the TVPRA "gives a clear, affirmative indication that Section 1595 applies extraterritorially to predicate violations of Section 1589 committed by U.S. entities — like these Defendants — via [TVPRA §] 1596's express grant of extraterritoriality"); *Aguilera v. Aegis Commc'ns Grp.*, 72 F. Supp. 3d 975, 979 (W.D. Mo. 2014) (plaintiff's TVPRA § 1595 claim based on forced labor in India in violation of TVPRA § 1589 could apply extraterritorially based on statutory text of TVPRA § 1596 and statutory intent of TVPRA is to combat international human trafficking); *cf. Howard*, 917 F.3d at 241 ("[W]e are satisfied that [TVPRA] § 1595 . . . evinces a 'clear indication of extraterritorial effect'" to plaintiff's TVPRA § 1589 claims since TVPRA § 3271 grants extraterritorial application to TVPRA § 1589 claims against government contractors).

First, every act in violation of the human trafficking chapter gives rise to civil liability. *See Ratha v. Rubicon Res., LLC*, 168 F.4th 541, 554 (9th Cir. 2026) (en banc) ("Congress intended <u>every</u> criminal act [in the TVPRA] to have a civil-remedy counterpart") (emphasis added). Thus, it can be distinguished from the RICO § 1964(c) statute analyzed in *RJR Nabisco*, which Justice Alito found to be "narrower in its application than [RICO] § 1962," supporting his conclusion that § 1964(c) did not provide for extraterritoriality. *RJR Nabisco*, 579 U.S. at 350. Crucially, unlike RICO § 1964(c), TVPRA § 1595(a) does not place a limitation on plaintiffs' ability to sue for an injury defined by other provisions of the TVPRA. *Compare* 18 U.S.C. § 1595(a) ("An individual who is a victim of a violation of <u>this chapter</u> [title 18, Chapter 77, 'Peonage, Slavery, and Trafficking in Persons'] may bring a civil action against the perpetrator . . . ") (emphasis added) *with* RICO § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . <u>except</u> that no person may rely upon

- 7 -

25cv583

any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.") (emphasis added).

Second, TVPRA § 1595 directly incorporates predicate offenses that govern foreign conduct. "[T]his chapter" as defined in TVPRA § 1595(a) includes, for example, TVPRA § 1585 (which prohibits any U.S. citizen or resident who is a "member of the crew or ship's company of <u>any foreign vessel</u> engaged in the slave trade" from seizing any person "on <u>any foreign shore</u> . . . with intent to make that person a slave") (emphasis added) and TVPRA § 1591 (which prohibits sex trafficking of minors under age 18 "affecting interstate or <u>foreign commerce</u>") (emphasis added). Thus, the civil remedy provision in the TVPRA directly incorporates predicate offenses that plainly apply at least to some foreign conduct. It makes little sense that Congress would pass a law holding civil liability is available for these offenses committed on "foreign shore[s]" or affecting "foreign commerce" unless it meant for the statute to be applied extraterritorially. *See* TVPRA §§ 1585, 1591.

Supporting this analysis, the Fifth Circuit found in *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 204 (5th Cir. 2017) that "[B]y conferring 'extraterritorial jurisdiction over any offense ... under' the TVPRA, [TVPRA] § 1596 permits private parties to pursue a civil remedy under the TVPRA [§ 1595] for extraterritorial violations." Although ultimately finding TVPRA § 1596 not applicable retroactively, the *Adhikari* Court viewed the addition of TVPRA § 1596 in 2008 (five years after the enactment of TVPRA § 1595 in 2003) as evincing Congressional intent to "enable[] . . . federal courts to entertain a private party's civil suit that alleges extraterritorial violations of the TVPRA." *Adhikari*, 845 F.3d at 200. More specifically, the *Adhikari* Court reasoned that the addition of TVPRA § 1596 effectuated a "substantive change" in permitting extraterritorial application of TVPRA § 1595—rather than clarifying existing law. *Adhikari*, 845 F.3d at 201. "[N]othing in the text of [TVPRA] § 1596 expressly indicates that Congress intended to clarify rather than change the TVPRA." *Adhikari*, 845 F.3d at 201. Thus, the *Adhikari* Court found that Congress intended TVPRA § 1596 to have the legal effect of

"eliminat[ing] . . . a prior defense"—namely in eradicating the presumption against extraterritoriality as a defense to civil claims under TVPRA § 1595 to enforce criminal predicates (including TVPRA § 1589). *Adhikari*, 845 F.3d at 204 (quoting *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 950 (1997)).

Bumble Bee Foods argues, first, that the Court should give great weight to the fact that TVPRA § 1595 is missing from the offenses listed in TVPRA § 1596 over which the Court has explicit extraterritorial jurisdiction. However, TVPRA § 1595 does not pertain to an offense; it is a "free-standing provision that creates a civil remedy for an offense that is any violation of this chapter." *F.C.*, 790 F. Supp. 3d at 1182 (quotations omitted). Thus, it does not make sense that Congress would include it in the enumerated offenses.

Second, Bumble Bee Foods argues that use of the term "offense" in TVPRA § 1596 suggests that the extraterritorial application is only to criminal violations. However, even the civil remedy provision of TVPRA § 1595 refers to a "victim" and a "perpetrator," terms generally reserved for criminal statutes. The nature of human trafficking is such that the use of the word "offense" in the extraterritoriality statute does not suggest that Congress meant to exclude civil actions.

Finally, Bumble Bee Foods contends in its original motion to dismiss that certain courts finding extraterritorial application were driven mainly by the fact that the alleged TVPRA § 1589 violations were committed by government contractors and employees, and thus, plaintiffs' civil TVPRA § 1595 claims predicated upon TVPRA § 1589 violations were subject to extraterritoriality under TVPRA § 3271. (*See* ECF No. 22-1 at 19:24–21:12 (citing *Howard*, 917 F.3d at 244 and *Hawkins*, 752 F. Supp. 3d at 134).) However, district courts adopting the logic in these decisions that TVPRA § 1595 claims predicated upon TVPRA § 1589 violations can apply extraterritorially have not imposed similar limits when finding TVPRA § 1596 (and not TVPRA § 3271) is the statute granting extraterritorial application to civil claims under TVPRA § 1595 to enforce violations of TVPRA § 1589.

25cv583

For example, the District of Colorado found that TVPRA § 1596 grants extraterritorial effect to the plaintiffs' TVPRA § 1595 claim predicated upon TVPRA § 1589 violations. *F.C.*, 790 F. Supp. 3d at 1180–81 (applying *Howard*, 917 F.3d at 241–42). In so finding, the District of Colorado further reasoned that "Other TVPRA provisions not covered by section 1596 but incorporated by section 1595 also have extraterritorial, if somewhat more limited, application." *F.C.*, 790 F. Supp. 3d at 1181. In making its point about the "limited" application of TVPRA provisions *not* covered by TVPRA § 1596, the District of Colorado cites *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 198–99 (D. Md. 2019), which finds that TVPRA § 1592—a TVPRA provision *not* listed as having extraterritorial application in TVPRA § 1596(a)—only has extraterritorial reach to actions against government contractors and employees via TVPRA § 3271(a). *F.C.*, 790 F. Supp. 3d at 1181.

Beyond *F.C.*, 790 F. Supp. 3d at 1181, other courts have similarly found that TVPRA § 1596(a)'s grant of extraterritoriality applies to TVPRA § 1595 actions brought to enforce TVPRA § 1589 violations—without explicitly applying TVPRA § 3271's limitations on extraterritoriality to actions against government contractors and employees. *See, e.g.*, *Adhikari*, 845 F.3d at 204 ("[B]y conferring 'extraterritorial jurisdiction over any offense . . . under' the TVPRA, [TVPRA] § 1596 permits private parties to pursue a civil remedy under the TVPRA [§ 1595(a)] for extraterritorial violations."); *see Hawkins*, 752 F. Supp. 3d at 133 (same); *see also A.A.*, 2026 WL 504904, at *19 (same); *see also Aguilera*, 72 F. Supp. 3d at 979 (same).

Ultimately, this Court agrees with courts finding that the TVPRA's overall statutory structure and legislative intent constitute a "clear, affirmative indication" that Plaintiffs' claims under TVPRA § 1595 based on predicate violations of TVPRA § 1589 could be applied extraterritorially—even against non-government employees and contractors—through TVPRA § 1596's express grant of extraterritoriality to violations of TVPRA § 1589.

25cv583

For the reasons above, the Court **DENIES** Bumble Bee Foods' motion to reconsider (ECF No. 36) the Court's prior holding that Plaintiffs have sufficiently alleged that their claim under TVPRA § 1595 to privately enforce predicate violations of TVPRA § 1589 can have extraterritorial application to survive the motion to dismiss stage (ECF No. 29).[1] For those same reasons, the Court finds it did not commit a clear error in denying Bumble Bee Foods' motion to dismiss Plaintiffs' TVPRA claims on grounds of extraterritoriality.

      **B.**     ***Mens Rea* Standard for Plaintiffs' TVPRA § 1595(a) Claim Predicated Upon TVPRA § 1589(b)**

Bumble Bee Foods moves to reconsider Plaintiffs' claims on the basis that the Court applied the incorrect *mens rea* standard when considering Plaintiffs' TVPRA claim to enforce a violation of TVPRA § 1589(b) through TVPRA § 1595(a). (ECF No. 36-1 at 7:8–12:14.)

As a threshold matter, for the reasons discussed in its prior Order (ECF No. 29 at 11:15–15:12), the Court reiterates that Plaintiffs have alleged that Bumble Bee Foods is participating in a venture under TVPRA § 1595(a) since Bumble Bee Foods is in a "continuous business relationship" with Rongcheng City and Rongcheng Ocean—operators of the fishing vessels on which forced labor in violation of TVPRA § 1589 occurred.[2] *C.C. v. Rashid*, No. 2:23CV02056-GMN-BNW, 2026 WL 252548, at *6 (D. Nev. Jan. 29, 2026) (citing *Doe (K.R.D.) v. Hilton Worldwide Holdings Inc.*, 798 F. Supp. 3d 1082, 1092–95 (N.D. Cal. 2025)). The particular fishing vessels Plaintiffs worked on are also part of that venture. (*See, e.g.*, ECF No. 29 at 13:11–12.)

---

[1] Since the Court finds that Plaintiffs have adequately met the first step of the *RJR Nabisco* framework, the Court finds it does not need to proceed to the second step of the *RJR Nabisco* framework regarding "whether the case involves a domestic application of the statute." *RJR Nabisco*, 579 U.S. at 326.

[2] Since the Court handed down its prior Order, *Ratha* III found "one can participate in a venture without operating or managing it." *Ratha* III, 168 F.4th at 560. Moreover, to the extent the standards for proving participation in a venture differ between TVPRA § 1589(b) and TVPRA § 1595(a), Plaintiffs only need to claim venture participation under TVPRA § 1595(a) to bring their civil claims. *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, at *3 (N.D. Cal. July 30, 2020).

25cv583

Additionally, TVPRA § 1595(a) makes it very clear that civil liability attaches to one participating in such venture if that participant "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value" if the participant "knew or should have known" that the venture committed an act in violation of this chapter. As the Ninth Circuit previously noted, this is a negligence standard. *Ratha* I, 35 F.4th at 1177; *Ratha* III, 168 F.4th at 561 (adopting "should have known" standard from *Ratha* I).

Bumble Bee Foods asserts that the Court should apply the *mens rea* standard from TVPRA § 1589(b)—that Bumble Bee Foods "knew" or was "in reckless disregard" of the forced labor in a venture that Bumble Bee Foods benefitted from. (ECF No. 36-1 at 7:17–18.) At oral argument, Bumble Bee Foods further asserted that since other venture participants were not U.S. citizens, residents, or otherwise present in the United States at the time of violation, the Court would not have extraterritorial jurisdiction over their TVPRA § 1589(b) violations through TVPRA § 1596. *See* TVPRA § 1596 ("[T]he courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section . . . 1589 . . . if (1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence . . . or (2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender."). Under Bumble Bee Foods' theory, to permit extraterritorial application of TVPRA § 1589 underlying Plaintiffs' civil cause of action against Bumble Bee Foods, the text of TVPRA § 1595 requires Plaintiffs to prove:

1. Bumble Bee Foods "should have known" that the venture involved the commission of acts in violation of the TVPRA; and

2. Bumble Bee Foods committed the relevant violation of TVPRA § 1589(b)—requiring proof that Bumble Bee Foods met the *mens rea* standard in TVPRA § 1589(b).

The Court finds that this reading of the interrelation between TVPRA §§ 1589, 1595, and 1596 is inconsistent with relevant precedent and the TVPRA's statutory scheme and text.

- 12 -

25cv583

First, the Ninth Circuit in *Ratha* I held: "To withstand Defendants' motions for summary judgment, Plaintiffs needed to present evidence creating a triable issue on whether <u>Rubicon [a U.S. company] or Wales [a Thai company registered to conduct business in California]</u>: (1) knowingly benefitted, (2) from participation in a venture (in this case with Phatthana), (3) which they <u>knew or should have known</u> was engaged in conduct that violated the TVPRA." *Ratha* I, 35 F.4th at 1175 (emphasis added). Further, *Ratha* I makes clear that "Phatthana is a Thai company that owned two seafood processing factories in Thailand, including the factory in Songkhla province. Phatthana does not have an address, employees, factories, or other property in the United States." *Id.* at 1165–66. In an *en banc* decision, the Ninth Circuit in *Ratha* III reiterated *Ratha* I's application of the "should have known" *mens rea* standard to the plaintiffs' TVPRA § 1595 claims against U.S. defendants (Rubicon and Wales) predicated upon non-U.S. venture participants' (Phatthana) extraterritorial TVPRA § 1589 violations. *See Ratha* III, 168 F.4th at 561. Thus, under *Ratha* I and III, the Court need not require Bumble Bee Foods to meet the *mens rea* standard in TVPRA § 1589 to permit extraterritorial application of Plaintiffs' TVPRA § 1595 claims predicated upon Bumble Bee Foods' benefitting from forced labor by foreign venture participants.

Second, TVPRA § 1596(a) grants U.S. courts extraterritorial jurisdiction over not only "<u>offenses</u>," but also "<u>any</u> . . . <u>conspiracy</u> to commit an offense . . . under section 1589" (emphasis added). Given that "conspiracy" is not explicitly limited to criminal conspiracies, the Court finds TVPRA § 1596(a)'s extraterritorial grant can also be read to include civil conspiracies as defined by TVPRA § 1595(a)—which include "whoever . . . <u>conspires to benefit</u> . . . from participation in a venture" (emphasis added). *Cf. Beck v. Prupis*, 529 U.S. 494, 500 (2000) (finding that "the combined effect of two provisions of RICO . . . read in conjunction, provide[d] a civil cause of action for conspiracy" based upon RICO § 1964(c)'s civil cause of action for RICO § 1962 violations, and RICO § 1962's prohibition of "conspir[acies]").

- 13 -

25cv583

Although "conspir[ing] to benefit," TVPRA § 1595(a), from a venture committing an offense is not categorically the same as "conspir[ing] to commit," TVPRA § 1596, the underlying offense, the two are equivalent here.  TVPRA § 1589(b) itself consists of "knowingly benefit[ing], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor . . . by any of the means described in subsection (a)."  A conspiracy "to benefit . . . from participation in a venture" under TVPRA § 1595(a) is therefore, on these allegations, a conspiracy to commit an offense under TVPRA § 1589(b)—and falls within TVPRA § 1596(a)'s express terms.

It thus follows that an "alleged offender" under TVPRA § 1596(a) includes those who participated in a civil conspiracy under TVPRA § 1595(a) to commit an offense under TVPRA § 1589(b).  Given that Bumble Bee Foods is alleged to be a participant in a civil conspiracy under TVPRA § 1595 that involves acts in violation of TVPRA § 1589(b), and that Bumble Bee Foods is a U.S. citizen, the Court finds that TVPRA § 1596(a)'s extraterritorial grant to listed offenses committed by U.S. citizens or residents (*see* TVPRA § 1596(a)(1)–(2)) applies to Plaintiffs' TVPRA § 1595(a) claims predicated upon other venture participants' TVPRA § 1589 violations against Bumble Bee Foods here.

Third, though TVPRA § 1596 addresses the reach of the Court's jurisdiction, it does not displace the substantive *mens rea* liability standard Congress supplied in TVPRA § 1595(a). *Cf. Torres v. Lynch*, 578 U.S. 452, 467 (2016) ("Congress uses substantive and jurisdictional elements for different reasons and does not expect them to receive identical treatment").  TVPRA § 1596(a) does not contain an express requirement that every conspirator under TVPRA § 1595(a) meet the *mens rea* for each TVPRA § 1589 violation for there to be extraterritorial application.  Thus, the Court finds that extraterritorial application of Plaintiffs' TVPRA § 1595(a) claims does <u>not</u> require alleging Bumble Bee Foods meets the *mens rea* standard for TVPRA § 1589.  Instead, Plaintiffs only need to sufficiently allege that Bumble Bee Foods meets the *mens rea* standard for a civil conspiracy under TVPRA § 1595(a)—which is the "should have known" *mens rea* standard. *Cf. Salinas v. United States*, 522 U.S. 52, 63–64 (1997) (a defendant may be

- 14 -

25cv583

liable for RICO conspiracy under 18 U.S.C. § 1962(d) without personally committing, or agreeing to personally commit, the predicate acts).

Separately, even accepting Bumble Bee Foods' argument that the "knowing or reckless disregard" standard from TVPRA § 1589(b) applies to Plaintiffs' TVPRA § 1595(a) claims predicated upon a TVPRA § 1589(b) violation, this Court finds that Plaintiffs nonetheless adequately alleged Bumble Bee Foods meets that *mens rea* standard. In construing the "knowing or reckless disregard" standard, *F.C.*, 790 F. Supp. 3d at 1193–94, reasoned that general knowledge of labor problems in an industry is not sufficient alone to meet the *mens rea* requirement to allege a TVPRA § 1595(a) claim predicated upon a TVPRA § 1589(b) violation.  *See, e.g.*, *Ratha* I, 35 F.4th at 1177 ("The identification of child labor and forced labor as a general problem in the Thai shrimp industry, before the relevant time period, sheds little light on whether labor abuses were occurring at Phatthana's Songkhla factory, let alone whether Wales knew or should have known of such abuses"); *F.C.*, 790 F. Supp. 3d at 1193 ("General knowledge of labor problems in an industry, they say, does not suffice to show the knowledge required by the TVPRA . . . That is true as far as it goes").  To sufficiently allege knowledge and sustain TVPRA § 1595(a) claims predicated upon TVPRA § 1589(b) violations, plaintiffs must show that defendants knew or were in reckless disregard of TVPRA § 1589(a) violations in specific projects or facilities over which defendants assumed responsibility.  *F.C.*, 790 F. Supp. 3d at 1193–94.

Here, Plaintiffs have alleged that Bumble Bee Foods knew or was in "reckless disregard" of the fact that the venture had engaged in forced labor in violation of TVPRA § 1589(a).  For example, Plaintiffs alleged that Greenpeace had emailed reports to Bumble Bee Foods' CEO and executives tying forced labor allegations to other vessels in Bumble Bee Foods' supply chain; and that other Bumble Bee Foods suppliers are in the same fleet families as Plaintiffs' vessels.  (ECF No. 1 ¶¶ 78–95.)  In addition, Plaintiffs alleged Bumble Bee Foods was provided notice that forced labor likely occurred on vessels over which Bumble Bee Foods had assumed responsibility via its Fisheries Improvement

- 15 -

25cv583

Projects ("FIPs")—requiring Bumble Bee Foods to regularly audit participating vessels. (ECF No. 1 ¶¶ 78–95, 199–207, 234–38.)  Plaintiffs also alleged that as part of the FIP program to certify Plaintiffs' vessels through the Marine Stewardship Council ("MSC"), Bumble Bee Foods filled out self-evaluation questions regarding whether participating vessels engaged in forced labor.  (*Id.* ¶¶ 250–51 (*e.g.*, whether participating fisheries had a known instance of "forced labor, child labor, or human trafficking within the past four years.").)  This further supports that Bumble Bee Foods assumed responsibility over working conditions occurring on the specific vessels on which Plaintiffs experienced forced labor.

In sum, even though Plaintiffs do not allege that Bumble Bee Foods was provided direct notice that forced labor occurred on the specific vessels on which Plaintiffs were subjected to forced labor, the Court finds that the following gives rise to a plausible inference of Bumble Bee Foods' knowledge of forced labor: (1) general knowledge of TVPRA violations on other vessels Bumble Bee Foods had assumed responsibility over—including vessels operated by Rongcheng City and Rongcheng Ocean; and (2) the fact that Bumble Bee Foods had assumed some responsibility over TVPRA-violating labor practices in the vessels.  *See F.C.*, 790 F. Supp. 3d at 1193–94 (" '[G]eneral knowledge of' TVPRA violations still 'often informs' the knowledge analysis . . . and here, that knowledge, combined with the defendants' assumption of responsibility over TVPRA-violating labor practices in World Cup stadium construction, gives rise to at least a plausible inference that the defendants knew that the venture engaged in forced-labor TVPRA violations.").

As *F.C.* puts it:

> [T]o fault the plaintiffs for a failure to allege that the defendants knew of the particular TVPRA violations against them would create a perverse incentive for a defendant to plead ignorance of individual plaintiffs based on the widespread nature of the venture's TVPRA violations.  That cannot be what Congress intended.

*F.C.*, 790 F. Supp. 3d at 1194.

- 16 -

25cv583

Thus, even accepting Bumble Bee Foods' argument that the "knowing or reckless disregard" standard from TVPRA § 1589(b) necessarily applies to Plaintiffs' TVPRA § 1595(a) claims predicated upon a TVPRA § 1589(b) violation, the Court finds Plaintiffs nonetheless sufficiently pled that Bumble Bee Foods met the requisite *mens rea* standard.

* * *

In sum, the Court finds it did not commit a clear error when applying the "should have known" *mens rea* standard in TVPRA § 1595(a) to Plaintiffs' claims under relevant caselaw and the statutory text of TVPRA §§ 1589, 1595(a), 1596. The Court also finds that, even applying the "knowing" or "reckless disregard" standard in TVPRA § 1589(b) construed by *F.C.*, Plaintiffs have adequately pled that Bumble Bee Foods meets that *mens rea* standard.

### C.    Supplemental Jurisdiction

Since the Court does not otherwise grant Bumble Bee Foods' Motion to reconsider Plaintiffs' TVPRA claims, the Court also **DENIES** Bumble Bee Foods' request to reconsider maintaining supplemental jurisdiction over Plaintiffs' civil negligence claims. (*See* ECF No. 36-1 at 12:15–13:6.)

### D.    Interlocutory Appeal

#### 1.    Legal Standard

The Court has the authority to certify an order for immediate interlocutory appeal under 28 U.S.C. § 1292(b) where (1) the decision "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

The Ninth Circuit cautions that district courts should only certify an interlocutory appeal in "rare circumstances" because "[s]ection 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). Thus, certification pursuant to section 1292(b) is appropriate "only in exceptional situations." *In*

25cv583

*re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) (citing *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam); and *Milbert v. Bison Labs.*, 260 F.2d 431, 433–35 (3d Cir. 1958)).  The party seeking the interlocutory appeal bears the burden of establishing that all three of the requirements for certification are met.  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

## 2.     Analysis

Here, Bumble Bee Foods requests that the Court certify the following questions (ECF No. 36-1 at 13:14–21):

> (A) Whether the Trafficking Victims Protection Reauthorization Act's civil liability provision, 18 U.S.C. § 1595, creates a private cause of action for conduct that occurred extraterritorially and, if not, where the focus is of a civil suit alleging a violation of 18 U.S.C. § 1589(b) [("Question A")]; and
> (B) Whether the *mens rea* for a civil cause of action under 18 U.S.C. § 1595(a) that seeks to hold a defendant liable as a direct "perpetrator" of an 18 U.S.C. § 1589(b) violation is criminal recklessness or civil negligence [("Question B")].

"To determine if a 'substantial ground for difference of opinion' exists under [28 U.S.C.] § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633.  "Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.' " *Id.* at 633.  "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.").  "However, 'just because a court is the first to rule on a particular question or just because counsel contends that one

25cv583

precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal.' " *Couch*, 611 F.3d at 633.

Bumble Bee Foods fails to meet its burden to show a substantial ground for difference of opinion on either the extraterritoriality of the TVPRA or the proper *mens rea*. Most courts discussing the issue have suggested extraterritorial application is appropriate. *See, e.g.*, *F.C.*, 790 F. Supp. 3d at 1183; *Hawkins*, 752 F. Supp. 3d at 133; *A.A.*, 2026 WL 504904, at *19; *Aguilera*, 72 F. Supp. 3d at 979; *Howard*, 917 F.3d at 241. Furthermore, the required *mens rea* under TVPRA §§ 1595 and 1589—and its interaction with TVPRA § 1596—is clearly laid out by statute.

Therefore, the Court **DENIES** Bumble Bee Foods' request for interlocutory certification. (ECF No. 36.)

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Bumble Bee Foods' Motion. (ECF No. 36.)

While the Court **GRANTS** Bumble Bee Foods' Motion to reconsider its prior construction of *Ratha* I as explicitly holding that TVPRA § 1595 claims predicated upon TVPRA § 1589 violations have extraterritorial application, the Court **DENIES** Bumble Bee Foods' Motion to reconsider whether the TVPRA clearly grants extraterritorial application to TVPRA § 1595 claims predicated upon TVPRA § 1589 violations. (ECF No. 36.) The Court also **DENIES** Bumble Bee Foods' Motion for interlocutory review. (*Id.*)

**IT IS SO ORDERED.**

**DATED: June 11, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

25cv583