UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKHMAD, et al.,<br>Plaintiffs,<br>v.<br>BUMBLE BEE FOODS, LLC,<br>Defendant. | Case No.: 25-cv-583-BAS-DEB<br>**ESI PROTOCOL**<br>**[DKT. NO. 73]** |

The parties in the above-captioned litigation (the "Action"), by and through their undersigned counsel, have proposed this ESI Protocol for the Production of Data ("Protocol"). The parties' stipulation is hereby approved and adopted as the court's order.

Pursuant to the provisions of Rule 34 of the Federal Rules of Civil Procedure permitting the parties to specify the form or forms in which documents are to be produced, the Protocol sets forth the specifications that shall govern document production during discovery in the Action:

## SCOPE

1. This Protocol governs the collection and production of electronically-stored information ("ESI") and hard copy documents (collectively "Data"), which are to be produced electronically in the Action.

2. Nothing herein shall alter the parties' respective responsibility to comply with the applicable Federal Rules of Civil Procedure and any applicable Local Rules regarding the collection or production of Data. To the extent additional obligations, restrictions, or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure or other applicable law or rules, that law or rule shall govern.

3. The parties incorporate the provisions of the Protective Order. For the avoidance of doubt, nothing herein shall contradict the parties' rights and obligations with respect to any information designated as Confidential pursuant to the Protective Order.

4. Nothing in this Protocol establishes any agreement regarding the subject matter or scope of discovery in this Action, or the relevance, authenticity or admissibility of any Data.

5. Nothing in this Protocol shall be interpreted to require production of Data protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable protection or privilege.

6. To promote communication and cooperation between the parties, the parties will designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. The ESI liaison for Defendant Bumble Bee Foods, LLC shall be Christine Sifferman. The ESI liaison for Plaintiffs shall be Nicholas Jacques. The Parties agree to work in good faith to schedule e-discovery conferences when the ESI Liaisons or their designee(s) are available.

7. The purpose of this protocol is to minimize the costs and burdens of discovery while allowing each party to meet their legitimate discovery needs. This protocol should not be interpreted or applied in any way that defeats this purpose. In particular, the parties anticipate that circumstances may arise in which strict compliance with this protocol may not be reasonable or efficient. In such instances, the parties agree to meet and confer in good faith and agree on any request for a variance that is reasonable under the circumstances.

**<u>DELIVERY OF DOCUMENT PRODUCTIONS</u>**

8. Each Party shall transmit its document productions to other Party's Liaison Counsel or such vendor as designated by a Party's ESI Liaison.

9. Document productions shall be made via secure file transfer protocol ("FTP") or similar secure or encrypted electronic transmission whenever possible. If this is not possible for a certain production, then document productions may be alternatively made via portable hard drives.

10. If either Party chooses to employ a document depository vendor to receive documents for its convenience, that side shall bear the costs of such a vendor and take reasonable steps to ensure that only persons authorized under the Protective Order have access to the depository.

11. Generally, the costs of production pursuant to this Agreement shall be borne by the Producing Party. The Producing Party may request and the Court may apportion the costs of electronic discovery in accordance with and only as allowed

by the Federal Rules of Civil Procedure. This paragraph is not meant to waive, limit, reduce, or increase the rights and/or obligations of either Party.

## ESI PRODUCTION FORMAT

12. **Image File Format:** Except for the types of documents identified in Paragraphs 13 and 14 below, a Producing Party will convert ESI from its native file format ("Native File") to an image file for production, subject to the following specifications:

a. Color 300 DPI text searchable PDFs, one PDF file per document, that reflects the full and complete information contained on the original document. To the extent reasonably possible, the imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks and original document orientation (i.e. portrait to portrait and landscape to landscape). Word processing documents will be processed to PDF format and imaged showing track changes or edits, comments, notes and other similar information.

b. The parties agree to meet and confer over the inclusion or exclusion of embedded files from the production. To the extent a document is not already unitized, the parties shall undertake reasonable efforts, if a document consists of more than one page, to unitize the document and any attachment(s) as in their original form when creating the image files. The parties shall also undertake reasonable efforts to ensure that distinct documents are not merged into a single record and that single documents are not split into multiple records.

c. Text files shall be produced as one file per document, named after the starting production number assigned to the document and ending with extension ".txt", with a text directory for each production volume, and with a relative file path to the text file provided in the related database load file. With the exception of TIFF, PDF and other image file types

for which the text cannot be extracted, the text of documents should be extracted directly from the Native File without using Optical Character Recognition ("OCR"), except in the case of redacted documents. Documents produced in redacted form should not have text files populated with extracted text but should instead have text files populated with OCR data which will not contain the redacted data. If a document does not contain extractable text, the Producing Party shall provide OCR files for that document to the extent possible.

d. Electronic documents attached to an email or electronic document and hard-copy documents attached or appended to a hard-copy document, are to be produced contemporaneously and sequentially immediately after the parent document. An attachment to or parent of a relevant document must be produced and may not be withheld on relevance grounds. Parent-child relationships within a document family (the association between an attachment and its parent document) shall be preserved. A document and all other documents in its attachment range constitutes a family group. Each document shall be produced with the production number for the first and last page of that document in the "BegDoc" and "EndDoc" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

e. Each of the metadata and coding fields set forth in Appendix 2 that reasonably can be extracted from an electronic document shall be produced for that document. Fields that are not populated shall be left with null values and not populated with fillers or spaces. All metadata pertaining to dates and times will be standardized to Coordinated Universal Time (UTC).

f. Production numbers shall be branded to the lower right hand corner of PDF images and confidentiality designations (if applicable) shall be electronically branded or burned to the lower left hand corner of PDF images so that they legibly print with the images. If a production number or confidentiality designation overlaps with the document's contents such that the contents, production number, or confidentiality designation are not clearly legible, the Producing Party shall, on request from the Receiving Party, re-produce the document with the production number or confidentiality designation in a different location. If one or more production numbers is skipped in a production, the Producing Party will so note in a cover letter accompanying the production or in a privilege log and shall produce a slip sheet bearing the skipped bates number. The parties shall use reasonable efforts to ensure that production numbers: (1) are unique and consistent across the entire production, provided, however, that parties may use multiple prefixes to reflect productions from separate entities or related to specific experts; (2) maintain a constant prefix and page length (0-padded) across the production, consistent with the requirements of sub-paragraph (1); (3) contain a prefix that clearly identifies the Producing Party; (4) contain no special characters or embedded spaces; and (5) are sequential within a given document. Attachments will immediately follow the production number(s) for the parent document. Production number prefixes shall be consistent across all documents a party produces in the litigation. However, to the extent a Producing Party produces documents as they were produced in prior proceedings, the documents shall retain their numbering from the prior proceedings.

g. Upon entry of this Protocol, each party shall also produce accompanying image load/unitization files and delimited text files as described below

in Appendix 1. Parties are encouraged to work in cooperation with one another and each other's respective vendors in exchanging sample load files. If this exchange occurs, the Receiving Party will have 14 days to respond with load file change requests. Nothing in this Order will limit the parties from discussing load file changes throughout the course of the litigation.

h. Where PDF images of certain electronic documents are not readable, the parties may produce such documents in native format. Where PDF images of certain hard copy documents are not readable, the parties will meet and confer regarding the volume and best method of production prior to producing paper documents in hard copy format. To the extent the Receiving Party obtains through discovery a file or document that the party believes is not adequately represented in PDF image format, the Receiving Party may request that the file or document be produced in native format by identifying the document by production number, the production of which shall not unreasonably be withheld.

13. **Non-Convertible Files:** Certain types of files such as system, program, proprietary files, audio files, and video files may not be amenable to conversion into PDF format. Such files will not be converted into PDF format. To the extent such files contain responsive non-privileged information, these files will be produced in their native format in accordance with Paragraph 14 below.

14. **Native Files:** The Producing Party will produce certain types of ESI in their native format, subject to the following specifications:

a. Spreadsheets, including Microsoft Excel Spreadsheets, Microsoft Access, and Google Sheets, shall be produced in native format with a single page PDF Slipsheet/Placeholder document that contain the Native File name and a Bates number in its place. Each party shall also produce with a link to the native file in the "NativeLink" field, along

with all extracted text and applicable Metadata fields set forth in Appendix 2. If a spreadsheet requires redactions, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained; and

b. Presentation files, including Microsoft PowerPoint, Google Slides and other electronic slide programs, shall be produced in native format. Each party shall also produce with a link to the native file in the "NativeLink" field, along with all extracted text and applicable Metadata fields set forth in Appendix 2. For presentation files hidden slides will be revealed and all slides will be printed in Slide and Notes view (one slide per page) with the slide appearing at the top of the page and the notes appearing at the bottom of the page. If a presentation file requires redactions, the Parties may produce as PDF images processed in accordance with the formatting specified above in Paragraph 12.

c. The parties may produce data files that require large text extractions, such as XML and XPD files, in native format.

d. The Producing Party will honor reasonable requests for native files for other types of documents. The Native File shall be renamed in the following format: Bates Prefix-Bates Number. Each of the metadata and coding fields set forth in Appendix 2 that reasonably can be extracted from an electronic document shall be produced for that document. Fields that are not populated shall be left with null values and not populated with fillers or spaces.

e. Where native files are produced in lieu of PDF images, each native file will be assigned a unique production number within the litigation database. The Producing Party will produce a placeholder (a single-page PDF slip sheet indicating that the native item was produced) along with the file itself in native format; provided that, in lieu of producing a

placeholder, a Producing Party may, in its sole discretion, produce PDF or JPEG images of PowerPoint or other presentation files in addition to producing native files. The placeholder will be branded with the production number in the lower right hand corner, the original filename of the native file, and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. The Producing Party will also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder.

f. To the extent that any file identified for production in native format contains information subject to a claim of privilege or any other applicable protection that requires redaction, the Producing Party shall convert that file to PDF format and produce it with the necessary redactions, along with OCR text that reflects such redactions, unless such conversion and redaction is unduly burdensome to the Producing Party. All such OCR text will be Unicode-compliance (UTF-8) to the extent practical. For spreadsheet files, and for other files where such conversion is unduly burdensome or renders the document unusable, the parties will meet and confer regarding how the Producing Party may produce the document in a reasonably usable form to be agreed upon by the respective parties.

g. The portion of the redacted text shall be clearly identified on the face of the PDF image, either by masking the redacted content with electronic highlighting in black or through the use of redaction boxes. The label "Redacted" shall appear on the face of the redacted portion of the PDF image. Redactions for privilege, work product, and Protected Data including whether such redactions must be included on a log, are discussed in more detail in Paragraphs 28-30 below. The redacted PDF image shall be produced in accordance with the image load file

specifications in Appendix 1, and any other provisions for the production of PDF images contained herein. Redacted text shall not be included in the text file for that redacted PDF image. The original unredacted Native File shall be preserved pending conclusion of the Action.

h. The parties will make reasonable efforts to remove passwords or other security protection from any Native File prior to production. If the security protection cannot be removed from a Native File after reasonable efforts by the Producing Party, a placeholder PDF image may be produced in place of the Native File indicating that security protection could not be removed from the Data. Upon request from the Requesting Party, the parties shall meet and confer in good faith regarding the reasonable efforts or mechanisms made to remove the security protection from the Native File and/or the production of the available metadata listed in Appendix 2 from the file.

i. If a Native File is used at a deposition or hearing in this Action, or attached to a motion or other filing, it shall be accompanied by its production number-stamped placeholder PDF image in order to facilitate tracking and authentication thereof. The parties may, but are not required to, further mark fixed images of Native Files with additional numbering for ease of identification at a deposition or hearing.

15. **Duplicates:** The Parties shall use reasonable, good faith efforts to avoid the production of duplicate ESI. Parties may de-duplicate exact duplicates (based on MD5 hash values at the family level) globally across custodians. De-duplication shall not break apart families. An e-mail that includes content in the "bcc" or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in the "bcc" or other blind copy field. Alternatively, the Responding Party may

produce the e-mail containing the bcc by itself. The Producing Party can either de-duplicate documents within custodians, or across custodians, provided they comply with the following:

a. If the Producing Party is de-duplicating across custodians, the Producing Party shall populate a field of data that identifies each custodian who had a copy of the produced document (the “All_Custodian field”) in addition to a separate field of data identifying the custodian whose document is produced.

b. If the Producing Party is de-duplicating within custodians only, there is no need to create or provide the All_Custodian field.

16. **Cloud and Link-Based Attachments:** For emails or messages containing cloud-based or other link-based attachments (including documents stored in SharePoint, OneDrive, Teams, or similar repositories and referenced by hyperlink), the producing party shall use reasonable efforts to preserve and produce the linked document, as it existed at the time the communication was sent or, if that version is not available, the most recent version available, including maintaining the parent-child relationship between the communication and the linked document where feasible.

17. **Messaging Platform Data:**

a. This sub-section governs messaging platforms, including enterprise messaging platforms (such as Slack, Microsoft Teams, Google Chat, and similar platforms administered by a corporate entity) and personal messaging applications (such as WhatsApp, Signal, SMS/text messaging, and similar applications used on personal devices). The Parties reserve all rights as to the relevance and proportionality of producing this type of data, and its inclusion in this Protocol does not constitute an agreement to produce it.

b. For any enterprise messaging platforms with centralized data retention and export capabilities, the Producing Party shall produce messaging data in a format that preserves threading, channel or conversation context, timestamps, sender and recipient information, reactions, and attachments, along with the following metadata fields: sender, recipients, channel or conversation name, timestamp, attachment filenames, and platform name.

c. For any personal messaging applications, the Producing Party may produce messaging data via the application's standard export functionality (e.g., WhatsApp's "Export Chat" feature) or PDF exports, with simplified metadata consisting of sender, recipient, date range, and platform name, without full compliance with the metadata extraction requirements of this Protocol. To the extent that it is not reasonably feasible to download the data via standard export functionality or PDF exports, the Producing Party as a last resort may produce as PDFs screenshots of the relevant messages taken in a way that displays the sender, recipient, and timestamp. To avoid extensive production of nonresponsive personal messages, each calendar day (UTC) of each thread may be considered a single, separate document and the Producing Party may withhold as nonresponsive the messages from any calendar day of a personal messaging application thread that does not contain any responsive messages. Where multiple documents are produced from the same thread, they should be produced sequentially to the extent practical. Purely personal messages found in personal message applications that are not responsive to any request for production and not relevant to any claim or defense in this case may be redacted. The Parties need not log redacted documents on a privilege log, provided the

reason for the redaction appears on the redaction label (e.g. Personal Content, etc.).

d. With respect to personal messaging application data, a party is not obligated to produce data that is not reasonably accessible on the custodian's device or through the application's standard export functionality and need not engage in forensic recovery or extraction from cloud backups absent a showing of good cause. The parties shall meet and confer regarding any disputes concerning the production of messaging platform data.

18. **Social Media and Web-Based Content:**

a. This subsection governs ESI on social media platforms (including but not limited to Facebook, Instagram, X (formerly Twitter), LinkedIn, TikTok, and YouTube) and on publicly accessible websites, including corporate websites, internal websites, archived web pages, and blog posts. For the purposes of this paragraph, "Corporate Web Content" means content published on or through websites, social media accounts, or online platforms owned, operated, or controlled by a corporate entity or its agents, including but not limited to corporate websites, press releases, sustainability or corporate social responsibility reports, supply chain disclosures, investor relations pages, marketing materials, and official social media accounts. "Individual Social Media Content" means content posted by or to the personal social media accounts of natural persons. The Parties reserve all rights as to the relevance and proportionality of producing this type of data, and its inclusion in this Protocol does not constitute an agreement to produce it.

b. With respect to Corporate Web Content, the Producing Party shall produce such content in a reasonably usable format, such as PDF printouts with URL and capture-date information, native data exports,

or web archive files, along with metadata sufficient to identify the URL, date of publication or posting, author or account name, and date of capture or archiving.

c. With respect to Individual Social Media Content, a Producing Party that is a natural person may produce responsive social media content via screenshots (including visible URL, date, and account information), PDF exports, or the platform's native data download functionality, without full compliance with the metadata extraction requirements of this Protocol. Purely personal Individual Social Medial Content that is not responsive to any request for production and not relevant to any claim or defense in this case may be redacted. The Parties need not log redacted documents on a privilege log, provided the reason for the redaction appears on the redaction label (e.g. Personal Content, etc.).

d. The parties shall meet and confer regarding any disputes concerning the production of Individual Social Media Content.

19. **Search Methodology:**

a. Within 14 days of serving discovery responses that postdate this Protocol and that provide for the production of documents that the Producing Party proposes to collect using search terms, or, in the case of such discovery responses served before the entry of this Protocol, within 7 days after the entry of this Protocol, the Producing Party will provide the Requesting Party a list of proposed search terms, custodians, and all custodial and noncustodial ESI sources to be searched. The Parties will then meet and confer within 7 business days regarding these proposed search terms and custodians. The Requesting Party may request hit counts for the search terms and custodians during the meet and confer process, and the Producing Party will honor any such request. Where the Producing Party is responding to a second or subsequent set

of requests for production served by the Responding Party, the Parties shall meet and confer to determine whether the deadlines in this paragraph should be shortened.

b. In disclosing the search methodology under this paragraph, the Producing Party shall disclose if it intends to use TAR/predictive coding or any generative artificial intelligence tool for the purpose of identifying or culling the documents to be reviewed or produced, and shall provide a description of the TAR tool and/or methodology to be used and the target recall rate (if applicable).

c. Nothing in this Protocol shall prevent any Party from conducting a manual review of documents after application of ESI search methodologies for responsiveness, privilege, and confidentiality.

20. **Production of Data from Databases and Other Formats:**

a. If a Producing Party identifies a particular source or type of responsive Data for which it reasonably believes that application of this Protocol would be unduly burdensome or impractical, the party identifying the source or type of responsive Data shall promptly notify the Requesting Party, explaining in detail the type and source of the Data at issue, and the reason(s) why the party believes that application of this Protocol would be unduly burdensome or impractical, and proposing reasonable modifications of this Protocol with respect to that source or type of responsive Data. Thereafter, the parties shall meet and confer within 14 calendar days to determine if modification of the Protocol with respect to the Data at issue is appropriate, and if an agreement is not reached, the Producing Party bears the burden of seeking relief from the Court from the requirements of this Protocol.

b. If a response to discovery requires production of ESI contained in a database or comprehensive electronic accounting system, the Producing

Party shall meet and confer with the Requesting Party concerning a reasonable method of production. To the extent reasonably available, the Producing Party shall also provide any data dictionary, key, or other information sufficient to provide a reasonable understanding of the contents of the database or accounting system.

c. Nothing in this Protocol requires a party, absent a showing of good cause, to use any data recovery processes or engage in any search beyond what is required under Federal Rule of Civil Procedure 26(b). To the extent a party believes that responsive data is likely to be found on data sources that are not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B), the party shall identify the sources containing potentially responsive information that it is neither searching nor producing and to the extent possible, provide sufficient details to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources.

21. **Time Zone:** Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value and do not automatically populate, and all metadata pertaining to dates and times will be standardized to Coordinated Universal Time (UTC). The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hard-coded text within a file.

22. **Foreign Language Documents:** Documents responsive to discovery requests shall be produced regardless of the language in which they are written. Search methodologies shall take into account the likelihood that any given data source contains foreign-language documents and shall be designed to locate responsive documents in the foreign language or languages likely to be found within the data source.

**HARD COPY DOCUMENT PRODUCTION FORMAT**

23. The parties agree that, with respect to documents that exist in hard-copy format ("Hard-Copy Materials"), a Producing Party will image and produce such documents as PDF images. Where paper scanned images have identification spines, file folder labels, sticky notes, or any other labels, the information on the label shall be scanned and produced to the extent practicable. In addition, folder labels, box labels, or binder labels (including spines), or other similar top level identifiers, to the extent practicable, shall be manually recorded at the time of scanning and coded in the Binder and/or Folder field. Load files for such productions shall include data relevant to the individual documents, including Bates numbering, custodian, OCR and folder labels and box labels that have been manually recorded.

24. Hard-Copy Materials in the possession of any natural person located in Indonesia must be scanned using a physical scanning device if possible. Only in the event that a physical scanner is not reasonably available, such materials may be scanned using a scanning application on a smart phone. Load files for these materials shall include data relevant to the individual documents, including (but not limited to) Bates numbering, custodian, and OCR. The Producing Party will honor any reasonable request to produce a new version of any such document if the manner in which the document is originally produced impedes legibility, OCR, or otherwise unreasonably interferes with the Receiving Party's ability to review and/or use the document.

25. To the extent responsive Hard-Copy Materials are included in a large compilation of documents that is compiled solely for the purposes of storage convenience and not for any purposes related to the litigation and contains irrelevant, non-responsive Hard-Copy Materials, the Producing Party may produce responsive, non-privileged Hard-Copy Materials without also producing non-responsive Hard-Copy Materials.

26. If a Producing Party reasonably believes that production of Hard-Copy Materials as imaged files pursuant to this Section is unduly burdensome, the Producing Party shall seek to meet and confer in good faith with the Requesting Party regarding content, volume, and related issues before any production of Hard-Copy Materials. If the parties are unable to reach agreement, any party may seek relief from the Court.

**PREVIOUSLY PRODUCED DATA**

27. To the extent a Producing Party is requested or ordered to produce materials that were previously produced in a different action or proceeding, the Producing Party shall disclose prior to production how such materials were produced in the previous action. The Producing Party may produce materials as they were produced in the prior action or proceeding but will meet and confer with the Receiving Party regarding any additional metadata overlays or alternative formats that may be required in order to make the materials reasonably usable. Nothing in this paragraph shall be interpreted to require the Parties to produce materials that were previously produced in a different action or proceeding; the Parties reserve all rights in this regard.

**WITHHOLDING OR REDACTING FOR PRIVILEGE**

28. A document that contains both putatively privileged information and non-privileged information should be produced with the putatively privileged information redacted and the non-privileged information left visible.

29. If a document that is responsive to a document request is entirely withheld as privileged, the document must be replaced by a slip sheet in the production that states “Document Withheld as Privileged” and the slip sheet must have a unique Bates number. In the event the withheld document is later produced, it should be produced bearing the same Bates number as the slip sheet originally produced in its place.

30. The parties shall not redact any document based upon any objection related to the relevance or non-responsiveness of a document, except for purely personal messaging and social media content, pursuant to Paragraphs 18(c) and 19(c) and Protected Data pursuant to Paragraph 36.

**PROTECTED DATA**

31. "Protected Data" means any information that a party believes to be subject to federal, state, or foreign data protection laws or other personally identifiable information or sensitive healthcare information. Protected Data constitutes highly sensitive materials requiring special protection. Examples of such data protection laws include but are not limited to The Gramm-Leach-Bliley Act, 15 U.S.C § 6801 et seq. (financial information); The Health Insurance Portability and Accountability Act and the regulations thereunder, 45 CFR Part 160 and Subparts A and E of Part 164 (medical information); Directive 95/46/EC of the European Parliament and of the Council of 24 October 1995 on the Protection of Individuals with Regard to the Processing of Personal Data and on the Free Movement of Such Data, 1995 O.J. (L281/31) (European Union personal information); Data Protection Act 1998 (c. 29) (United Kingdom personal information); the German Federal Data Protection Act (Germany personal information); the Belgian Law of December 8, 1992 on Privacy Protection in relation to the Processing of Personal Data (Belgium personal information); Personal Information Protection and Electronic Documents Act (PIPEDA), S.C. 2000, c. 5 (Canada personal information); The Federal Law on Protection of Personal Data held by Private Parties (published July 5, 2010) (Mexico personal information); and The Personal Information Protection Act (Law No. 57 of 2003) (Japan personal information).

32. The Responding Party may redact Protected Data that is not relevant to any party's claims or defenses, unless such information relates to the Requesting Party or relates to or identifies an individual named as a party. The Parties need not log redacted documents on a privilege log, provided the reason for the redaction

appears on the redaction label (e.g. Protected Data, etc.). The Responding Party will not deny reasonable requests for more information regarding the reasons for any redactions, and the Parties reserve their right to request a redaction log from a Responding Party should they conclude in good faith that one is necessary to understand the meaning for redactions. The parties will meet and confer regarding any objections by the Requesting Party to the Responding Party's redactions of Protected Data, including whether the Responding Party must produce a redaction log. If the parties are unable to reach an agreement on redactions of Protected Data, they must seek further relief from the Court pursuant to Federal Rule of Civil Procedure 26(c) and S.D. Cal. Local Rule 26.1(a). The Responding Party shall preserve an un-redacted version of the item. Protected Data shall be redacted from any public filing not filed under seal.

**OBJECTIONS PRESERVED**

33. Nothing in this Protocol shall be interpreted to require disclosure of relevant information or Data that is protected by the attorney-client privilege, common interest privilege, work-product doctrine, or is prohibited from disclosure under any similar law, regulation, rule, court order, or any other applicable privilege or protection. The parties do not waive any objections to the production, discoverability, or confidentiality of ESI, Hard-Copy Materials or any other discovery materials, including, without limitation, objections regarding the burden, overbreadth or relevance of document requests related to ESI, Hard-Copy Materials or any other discovery materials, or relating to the production of ESI or Hard-Copy Materials in a form specified in this Protocol.

**RESOLUTION OF DISPUTES**

34. The parties agree to meet and confer in good faith regarding matters related to the production of Data not specifically set forth in this Protocol, related to the interpretation of this Protocol, or related to the parties' obligations thereunder. The parties shall make their best efforts to comply with and resolve any differences

concerning compliance with this Protocol. If a Producing Party cannot comply with any material aspect of this Protocol, such party shall inform the Requesting Party in writing at or before the time of production as to why compliance with the Protocol is unreasonable or not possible.

35. If the parties are unable to reach resolution regarding any dispute concerning the interpretation of this Protocol or compliance with same, such disputes may be presented for judicial resolution. No party may seek judicial relief concerning this Protocol unless it first has conferred with the applicable Producing or Requesting Party.

**IT IS SO ORDERED.**

Dated: October 19, 2026

Daniel E. Butcher
United States Magistrate Judge

## APPENDIX 1: Load File Formats

**Image Load Files**

- ESI will be produced in Opticon load file format. Upon request and demonstration of need, the Parties will meet and confer to discuss production in an alternative load file format or to produce without load files.
- Every document referenced in a production image load file shall have all corresponding images, text, and data. Redacted text shall not be included in a redacted document's text file.
- The name of the image load files shall mirror the name of the delivery volume, and should have an .opt or .log file extension (e.g., ABC001.OPT or ABC001.LOG).
- The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.).
- Every image in the delivery volume shall be contained in the image load file.
- The image key shall be named the same as the production number of the first page.
- Load files shall not span across media (e.g., Hard Drives, etc.); instead, a separate volume shall be created for each piece of media delivered.
- Each image load file shall be produced in a standard litigation support image load format (e.g., .opt or .log) providing:

  a. The document number for each document;

  b. The relative path name(s) of each PDF image file; and

c. The document boundaries for each document.

- The load file shall be in the order that appropriately corresponds with each image file. The following represents an example of the format of a standard .opt or .log image load/unitization file:

  Bates,Volume,PATH_to_image,Document Break,Folder Break,Box Break,Total_Pages.

M_0100000,06150101,\06150101\0000\0001.PDF,Y,,,1

M_0100001,06150101,\06150101\0000\0002.PDF,Y,,,1

M_0100002,06150101,\06150101\0000\0003.PDF,Y,,,1

M_0100003,06150101,\06150101\0000\0004.PDF,Y,,,2

M_0100005,06150101,\06150101\0000\0006.PDF,Y,,,1

M_0100006,06150101,\06150101\0000\0007.PDF,Y,,,4

**<u>Metadata Load Files</u>**

- The metadata load file shall be in Concordance format and shall use the following delimiters:
  - Field Delimiter: ¶ (ASCII 020)
  - Text Qualifier: þ (ASCII 254)
  - Multi-value Delimiter: ; (ASCII 059)
  - New line: ® (ASCII 174)
- Metadata fields that are not applicable to a document or are NULL shall be left with null values and not populated with fillers or spaces.

- All date fields shall be produced in "mm/dd/yyyy" format.
- All time fields shall be produced in "hh:mm:ss" format.
- Load files shall not span across media (e.g., Hard Drives, etc.); instead, a separate volume shall be created for each piece of media delivered.
- The name of the metadata load file shall mirror the name of the delivery volume and shall have a .dat or .txt extension (i.e., ABC001.DAT or ABC001.TXT).
- The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.).
- Furthermore, .dat or .txt files must be encoded in UTF codings.
- The metadata fields listed in Appendix 2 (as pertain to particular categories of documents pursuant to this Protocol) shall be included in the delimited database load files, to the extent such metadata is already in existence and reasonably accessible. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this Protocol shall require any party to extract, capture, collect or produce such metadata. Any party that intends to withhold existing metadata listed in Appendix 2 on the basis that it is not reasonably accessible or available or would be unduly burdensome to collect shall promptly inform the requesting party and meet and confer. The parties will reasonably endeavor to confirm the accuracy of the metadata extraction process and expressly reserve their rights to object to the use of metadata for any reason or purpose. To the extent that the metadata listed in Appendix 2 relating to any ESI contains information subject to a claim of privilege or any other applicable protection, that metadata may be redacted or withheld, as appropriate, and the Producing Party shall

include information regarding the basis and justification for withholding or redacting such information in its privilege log in accordance with Rule 26 of the Federal Rules of Civil Procedure.

## APPENDIX 2: ESI Metadata and Coding Fields[1]

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| BegDoc | Production number of the first page of the document. | E-mail, E-doc, or Paper as appropriate | Prefix-0000000001 |
| EndDoc | Production number of the last page of the document. | All | Prefix-0000000002 |
| BegAttach | Production number of the first page of the first document of the document family. | All | Prefix-0000000001 |
| EndAttach | Production number of the last page of the last document of the document family. | All | Prefix-0000000004 |
| AttachCount | The number of attachments to a document. | All | 3 |
| FileType | The record type of a document. | All | Paper, Email, E-Attachment, Standalone Electronic Document |

[1] For ESI other than email and e-docs, such as text messages, chat messages, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

| **Field Name** | **Field Description** | **Populated For** | **Example Values** |
|---|---|---|---|
| All_Custodians | Additional custodians who had a copy of the document prior to de-duplication, including duplicate custodians. | All | |
| To | All recipients that were included on the "To" line of the e-mail or calendar item. | E-mails | larry.murphy@email.com |
| From | The name and e-mail address sender of the e-mail or calendar item. | E-mails | Bart.Cole@email.com |
| CC | All recipients that were included on the "CC" line of the e-mail. | E-mails | sstephens44@email.com |
| BCC | All recipients that were included on the "BCC" line of the e-mail. | E-mails | ceogs@email.com |

| **Field Name** | **Field Description** | **Populated For** | **Example Values** |
|---|---|---|---|
| DateSent | Date the email was sent. | E-mails | mm/dd/yy |
| TimeSent | Time email was sent. | E-mails | hh:mm:ss |
| DateRcvd | Date an e-mail was received (UTC). | E-mails | mm/dd/yyyy |
| TimeRcvd | The time an e-mail was received (UTC). | E-mails | hh:mm:ss: |
| Meeting Start Date | The start date of the calendar entry | E-mails | |
| Meeting Start Time | The start time of the calendar entry. | E-mails | |
| Meeting End Date | The end date of the calendar entry. | E-mails | |
| Meeting End Time | The end time of the calendar entry. | E-mails | |
| DateCreated | The date an e-mail or e-file was created (UTC). | E-mails, E-attachments and electronic documents | mm/dd/yyyy |
| TimeCreated | The time an email or e-file | E-mails, E-attachments | hh:mm:ss: |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| | was created (UTC) | and electronic documents | |
| DateLastModified | Date the document was last modified. | E-attachments; Electronic documents | mm/dd/yyyy |
| TimeLastModified | The time an e-file was last modified (UTC). | E-attachments; Electronic documents | hh:mm:ss: |
| LastSavedBy | Value shows within the "last saved" metadata field. | E-mails, E-attachments and electronic documents | |
| Hash | MD5 hash value of document or "de-duplication key" | All | Hash Value |
| FileName | The file name of the document, including file extension | E-attachments; Electronic documents | |
| Author | Author of document | E-attachments and electronic documents | |
| Subject | Document subject line of an e-mail | E-mails | |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Conversation Index | Email thread identifier. | E-mails | |
| Orig_File_Name | The original file name of an electronic document or an attachment to an Email. | E-attachments and electronic documents | |
| File_Ext | The file extension of a document. | All | Doc, nsf, rtf, pdf, msg, xls, etc. |
| File_Size | The file size of a document (including embedded attachments). | All | |
| FilePath | The full path to the file at its original location. | All | |
| NativeFilePath | The path to the corresponding native file included with a production volume. | E-attachments and electronic documents produced in native format | |
| TEXTPATH | The relative path to the corresponding OCR or extracted text | All | |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| | file included with a production volume. | | |
| Confidentiality Designation | The designated level of confidentiality pursuant to the Protective Order. | All | CONFIDENTIAL |
| Foreign Language | Specifies all languages found in the document to the best of the processing software's ability. | All | German; Spanish; English |
| Redacted | "Yes" if redacted. | All | Yes/blank |